135 N.J. Super. 290 (1975)
343 A.2d 145
MICHAEL GRUCCIO AND PHYLLIS GRUCCIO, HIS WIFE, PLAINTIFFS,
v.
DAVID BAXTER, M.D., ELMER MATTIOLI, M.D., AND MILTON FINEMAN, M.D., DEFENDANTS.
Superior Court of New Jersey, Law Division.
June 24, 1975.
*291 Mr. Marvin D. Perskie for plaintiffs (Messrs. Perskie and Callinan, attorneys).
Mr. Burchard V. Martin for defendants David Baxter, M.D. and Elmer Mattioli, M.D. (Messrs. Martin, Crawshaw & Mayfield, attorneys).
Mr. James W. Taylor for defendant Milton Fineman, M.D.
*292 MILLER, J.C.C., Temporarily Assigned.
Plaintiffs seek to amend a pretrial order previously entered by adding under paragraph seven thereof, as an additional legal issue, "lack of informed consent and assault and battery and the damages therefrom." R. 4:25-1(b) (7). The motion was precipitated by the suggestion of the court during the pretrial conference when plaintiffs insisted on the inclusion of such issues in the pretrial order. The court declined to include this issue, but, mindful of the sanctions imposable under In re Contempt of Carton, 48 N.J. 9 (1966), suggested this motion to afford both sides opportunity to research and argue the matter. Insofar as applicable, the facts pleaded or disclosed are as follows. (The complaint is woefully deficient of factual allegation, although replete with unsupported conclusions of law).
Defendants Baxter and Mattioli are engaged in the practice of general surgery. Defendant Fineman is engaged in the practice of internal medicine. Michael Gruccio was, during the times complained of, a patient of some or all of the defendants. In 1972 he complained to Fineman of certain symptoms in his left lower abdomen, the history being suggestive of diverticulitis. An admission to the hospital as a medical patient disclosed an abdominal mass. He was admitted to the service of defendant Baxter and on December 4, 1972 his abdomen was explored surgically by Baxter, assisted by Mattioli. A mass the size of "one's double fist" was discovered adherent to the dome of the bladder and to the area of the promontory of the sacrum and the iliac vessels. Baxter felt this mass was cancerous, declined to remove it, and advised plaintiff he had terminal cancer and that the mass was irremovable. This diagnosis was wrong and the mass was later removed by another surgeon and found to be benign. This suit resulted, Gruccio's wife suing per quod.
For an analysis of the issues presented reference must be had to the complaint, which, absent amendment, governs the course of plaintiff's case. R. 4:9; 4:25-1. An analysis of *293 this complaint discloses that the acts complained of recite "malpractice * * * in that they * * * negligently diagnosed his condition * * * and wrongly advised the plaintiff that he had a short terminal illness." It is further alleged that they "negligently carried out surgical procedures * * * and negligently performed a procedure that was unindicated in the first place." Other allegations in the complaint are mere conclusions of law and do not constitute proper pleading. Untermann v. Untermann, 19 N.J. 507, 518 (1955); McKee v. Harris-Seybold Co., 109 N.J. Super. 555, 573 (Law Div. 1970), aff'd 118 N.J. Super. 480 (App. Div. 1972). The ad damnum clause seeks compensatory damages, interest and costs. Punitive damages are not sought.
Paragraph three of plaintiffs' pretrial memorandum, which is quite complete, recites in detail facts supporting the above allegations of the complaint and further contains the following intriguing language:
"Plaintiff incorporates all allegations of negligence made in his interrogatories. Also, the defendants failed to inform the plaintiff of the risks and complications attendant to the surgery that was performed in accordance with contemporary community standards and therefore, the surgery that was performed, was obtained without an informed consent and constituted the assault and battery for which compensatory and punitive damages are sought. The action sounds in negligence, malpractice, lack of informed consent, and assault and battery." (Emphasis supplied).
It is to be noted that the language of this paragraph differs significantly from that of the complaint and constitutes a radical and unwarranted departure therefrom. It demonstrates graphically the effect of deviation from the practice of good pleading, and the confusion between the practice of permitting liberal amendments to pleadings in order to prevent injustice, on the one hand, and the fundamentally necessary requirement that a viable cause of action be properly pleaded on the other.
This confusion more often than not generates wasteful and unnecessary expenditures of time and money by counsel and *294 courts. It frequently results in delay, expense and injustice. A return to basics would appear appropriate.
R. 4:5-2 states as follows: "A pleading which sets forth a claim for relief * * * shall contain a statement of the facts on which the claim is based, showing that the pleader is entitled to relief * * *" (Emphasis supplied). Nothing in recent jurisprudence has appeared to emasculate the forceful and concise language of Grobart v. Society for Establishing Useful Mfrs., 2 N.J. 136 (1949):
The flexibility and seeming informality of pleadings * * * should not deceive one into believing that the essentials of sound pleading * * * have been abandoned. Quite the contrary; the objective of reaching an issue of law or of fact in two or at the most three simple pleadings has been attained, but not at the sacrifice of stating the elements of a claim or of a defense. They remain the same as at common law as a matter of substantive law as well as of good pleading. "The forms of action we have buried, but they still rule us from their graves." Maitland (1940) Forms of Action at Common law, p. 2. [at 150]
Grobart, while possibly forgotten (or unlearned), remains an outstanding example of the essential function of modern pleading. It ought to be required reading for every law student.
It is true that the legal system has moved far from the days when pleadings constituted straightjackets. R. 4:9-1 permits amendments, R. 4:9-2 permits them to be made to conform to the evidence (but only after fair notice), and R. 4:9-3 permits them to relate back (if it can be done without prejudice). This rule is necessary to avoid injustice, to prevent a party from being injured by his (or his counsel's) failure to perceive his proper course of action. But it must be read in conjunction with the spirit of all, particularly R. 4:5-2 and Grobart. Liberal as our practice is, it does not justify the pleading of mere conclusions without facts, followed by reliance upon subsequent discovery (without a frame of reference) to justify a lawsuit.
It is just inexcusable to plead merely a conclusion and thereafter attempt to justify this action by an attempt to resort *295 to the discovery practice permitted by our rules. Such discovery is intended as an aid to every litigant to avoid surprise and make a lawsuit an inquiry into truth and justice. It is not (and was not intended) to be a substitute for good pleading, a shield for the lazy pleader or a means of avoiding the requirements of pleading legally sufficient facts. So vague a pleading ought to be met promptly by a motion for a more definite statement under R. 4:6-4. If such statement is not promptly forthcoming, the pleading should be promptly stricken after a motion under R. 4:6-5. Our discovery practice is no more a cure to legally deficient pleadings than aspirin is to cancer.
Measured by these standards an analysis of the instant case indicates clearly both the thrust and deficiencies of the plaintiffs' case. Obviously the gravamen of the case sounds in tort. It is, by the plaintiff's own statement, a medical malpractice case. Plaintiffs would attempt to make medical malpractice a separate tort, sui generis, but this is patently an erroneous assumption. A medical malpractice suit is merely an expensively labelled negligence case. It involves an alleged deviation from a given standard of performance by one claiming to be skilled in his field. Schueler v. Strelinser, 43 N.J. 330, 345 (1964); Toy v. Rickert, 53 N.J. Super. 27, 31 (App. Div. 1958). In the final analysis it is distinguishable from an ordinary negligence case only by its factual background and possibly by more dramatic damages. There can be fairly spelled out in this complaint and pretrial memorandum the essentials of such a cause of action, sounding in negligence. Plaintiffs are obviously entitled to proceed with their proofs.
This motion, however, seeks to go further. Despite a lack of any such allegations in the complaint, plaintiffs' factual and legal contentions quoted hereinabove seek to impose liability and punitive damages on defendants on the theory of an assault. This ingenious theory bottoms itself on supposed deviation from informed consent. It is alleged that such deviation constitutes assault; that for assault, punitive damages *296 will lie. Manifestly this must presuppose willful or wanton misconduct on the part of defendants, for punitive damages or "smart money" are damages imposed by the law upon this type of defendant. Not one fact is alleged to justify such damages, and conclusions without facts are impotent in the law. See Berg v. Reaction Motors Div., 37 N.J. 396, 412 (1962); Neigel v. Seaboard Finance Co., 68 N.J. Super. 542, 554 (App. Div. 1961). The charged deviation from "informed consent" was the failure to remove the mass. No straining of the English language can convert inactivity into an assault. Non-action can never become action.
Plaintiffs need not include "lack of informed consent" as a legal issue under paragraph seven of the pretrial order. Such "lack of informed consent" would obviously constitute a deviation from a standard of care, and, if proven, would be actionable. Cf. Bennan v. Parsonnet, 83 N.J.L. 20 (Sup. Ct. 1912). To that extent their motion is denied as unnecessary since it is already within the scope of the pretrial order.
Plaintiffs' application to include assault is denied. Nothing in the case remotely suggests a deliberate tort (as an assault must be) and only in plaintiffs' pretrial memorandum does such suggestion occur. Until such time as plaintiffs can allege facts, they then will become able, under our liberal practice, to formally move to amend. The court must then look on their application with favor. Until then, they, as all parties to a lawsuit, must be bound by the rules of good pleading and the words of the old legal maxim, "Out of the facts the law ariseth."
The motion is denied. In view of the fact that the motion was invited by the court it would be manifestly unjust to impose costs.