**596 A.2d 773**

CENTRAL MOTOR PARTS CORPORATION, PLAINTIFF, v. E.I. DUPONT DENEMOURS AND COMPANY, INC., AND INMONT CORPORATION (A/K/A INMONT DIVISION OF BASF CORPORATION), DEFENDANTS.

Superior Court of New Jersey
Law Division Mercer County

September 29, 1989.

*Mitchell S. Berman* for plaintiff (*Eisenstat, Gabage and Berman,* attorneys).

*Susan Scott* for defendant, duPont (*Riker, Danzig, Scherer, Hyland and Perretti,* attorneys).

*Peter R. Freed* for defendant, Inmont (*Smith, Stratton, Wise, Heher and Brennan,* attorneys).

CARCHMAN, J.S.C.

This action for indemnification and counsel fees follows the settlement at trial of a strict liability action against a distributor and two manufacturers. The distributor seeks indemnification and counsel fees from the manufacturers; however, independent claims of negligence were made against the distributor in the original action. The novel issue presented by these cross-motions for summary judgment is whether independent good-faith claims against a distributor bar an indemnification claim where, because of the intervening settlement of all claims, the validity of the independent claims was never adjudicated.

Plaintiff, Central Motor Parts Corporation (hereinafter referred to as "Central"), is a distributor of automotive supplies. In addition to various other products and equipment, Central distributes automotive paint products manufactured by defendants, E.I. duPont de Nemours and Company (hereinafter referred to as "duPont") and Inmont Corporation (hereinafter referred to as "Inmont"). Central, duPont and Inmont were co-defendants in a prior products liability action entitled *Paul Myatovich and Georgina Myatovich v. E.I. duPont de Nemours and Company, Inmont Corporation, Central Motor Parts Corporation, et als.* (hereinafter referred to as "the Myatovich action").

Paul Myatovich was employed by Collex Collision, an auto body shop, to spray paint vehicles. Myatovich routinely used spray paints and related paint products which were manufactured by duPont and Inmont. Central and another defendant, Midstate Automotive Supply Company distributed these products. To prevent the inhalation of paint fumes, Myatovich routinely wore a type of protective face mask which was sold to Collex Collision by Central. These masks were not manufactured by duPont or Inmont.

Over the years, Myatovich manifested symptoms which indicated that his body had ingested the spray paint. Myatovich

exhibited increasing signs of illness and, ultimately, suffered a heart attack and various motor and neurological disfunctions. He and his wife, Georgina Myatovich, instituted an action alleging claims of strict liability and negligence against the manufacturers and distributors of the automotive paints he used while working at Collex. Additionally, the complaint asserted independent allegations against Central based on, among other causes of action, its failure to warn of the hazards associated with the use of the spray paints and its negligent distribution of protective face masks which were not suitable for their intended use. As noted, these masks were manufactured by a third-party not a party to this action.

Just prior to the commencement of the *Myatovich* trial, a settlement was reached between Myatovich and duPont and Inmont. Central declined to participate in the settlement. When the settlement was placed on the record, counsel for Myatovich announced his intention to proceed against Central on independent claims of negligence and strict liability. Shortly thereafter, and before jury selection, Central settled with Myatovich.

In placing the settlement on the record, Central reserved its right to proceed on its cross-claims for indemnification from duPont and Inmont. It is these claims which constitute the basis for the action currently before this Court. Central seeks indemnification from duPont and Inmont for all payments made in settlement of the *Myatovich* action and for all counsel fees incurred in the defense of that action.

In strict liability actions, common law indemnification is available to a non-negligent retailer or distributor of a defective product. *See Promaulayko v. Johns Manville Sales Corp.,* 116 *N.J.* 505, 562 *A.*2d 202 (1989); *Cartel Capital Corp. v. Fireco of N.J.,* 81 *N.J.* 548, 410 *A.*2d 674 (1980); *Newmark v. Gimbels,* 54 *N.J.* 585, 258 *A.*2d 697 (1969); *American White Cross v. Continental Insurance Co.,* 202 *N.J.Super.* 372, 495 *A.*2d 152 (App.Div.1985). Indemnification from the primarily

negligent manufacturer provides relief to the non-negligent retailer/distributor who, by action of law, is forced to share the burden of liability regardless of a lack of wrongdoing.

■  The liability of a non-negligent party is often referred to as vicarious or secondary liability. Vicarious liability, in the context of indemnification, has been defined as requiring one party to demonstrate that they are completely without fault rather than showing a lesser degree of fault in relation to the fault of another party. *Arcell v. Ashland Chemical Co. Inc.*, 152 *N.J.Super.* 471, 489, 378 *A.*2d 53 (Law Div.1977). Consequently, in products liability actions, indemnification is denied to a distributor/retailer whose active wrongdoing contributed to the alleged injuries. *Promaulayko v. Johns Manville Sales Corp.*, *supra*, 116 *N.J.* at 512, 562 *A.*2d 202; *Cartel Capital Corp. v. Fireco of N.J.*, *supra* at 566, 410 *A.*2d 674.

■  While New Jersey recognizes the right to indemnification for monies paid in settlement, the scope of this right remains undefined. In *Popkin Brothers, Inc. v. Volk's Tire Co.*, 20 *N.J.Misc.* 1, 23 *A.*2d 162 (Sup.Ct.1941), a truck fleet owner sought indemnification from a tire company for its settlement with a pedestrian who was injured when one of the truck's tires malfunctioned. Pursuant to an agreement with the truck fleet owner, the tire company assumed the responsibility for inspecting and maintaining the working condition of the tires on all of the trucks.

In denying the motion to dismiss the claim for indemnification, the court determined that the right of indemnification exists for those claims which are extinguished by way of settlement as well as for those claims which are reduced to judgment by way of a full judicial hearing. The court set forth three prerequisites to indemnification for the voluntary satisfaction of claims. Firstly, it must appear that the settling party legitimately faced liability for the claims underlying the settlement. Secondly, the settling party must prove the reasonableness of the settlement amount. Finally, the *Popkin* court

citing *Restatement of Restitution* ¶ 93, stated that "it is necessary for him [the settling party] to prove that his payment terminated or reduced a valid claim against the other [the prospective indemnitor]". *Id* at 5, 6, 23 *A.*2d 162.

The United States Court of Appeals for the Fifth Circuit in *Parfait v. Jahncke Service, Inc.*, 484 *F.2d* 296 (5th Cir.1973), *cert. den.* 415 *U.S.* 957, 94 *S.Ct.* 1485, 39 *L.Ed.*2d 572 (1974), also dealt with the issue of indemnification. The court found that a defendant shipowner was entitled to indemnification from the employer of plaintiff who was injured while performing repairs onboard the vessel. Plaintiff slipped on fuel oil which had accumulated on deck as a result of a broken fuel line. Prior to his fall, plaintiff was aware of the oil leakage even though it was not related to or caused by his actions.

Defendant shipowner settled with the injured plaintiff and proceeded against plaintiff's employer for indemnification based on the *Ryan* doctrine—a maritime contractor's warranty to perform work properly and safely. *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 *U.S.* 124, 76 *S.Ct.* 232, 100 *L.Ed.* 133 (1956). The court held that in order to succeed on his claims for indemnification the shipowner had to first establish that an indemnitor/indemnitee relationship existed between himself and the contractor/employer. Once a duty to indemnify was established, either in contract or in tort, the indemnitee need only show that the settlement was reasonable and associated with the indemnitee's potential liability.

All parties in the present case concur that New Jersey and Federal case law allow indemnification for settlement payments but require the indemnitee to demonstrate that: a) the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; b) the indemnitee faced potential liability for the claims underlying the settlement; and c) the settlement amount was reasonable. The critical inquiry here is whether Central is a true indemnitee. Inmont and duPont contend that the claims which remained against Central after

the Myatovich/duPont–Inmont settlement were not based on vicarious liability but were independent claims not related to any relationship, factual or legal, between Central and duPont or Inmont. Consequently, under the principles of common law indemnification, Central cannot establish its status as a true indemnitee, because it was potentially liable for allegations of independent negligence. Central argues, however, that the evidence culled from pre-trial discovery indicates that a trier of fact could not have found any independent, non-vicarious liability on its part.

Unlike the present case, the cases cited by Central, Inmont, and duPont assume the existence of a valid indemnitor/indemnitee relationship between the parties, and the parties do not dispute the assumption of a pre-existing duty to indemnify. See *Popkin Brothers, Inc. v. Volk's Tire Co., supra; Tankrederiet Gefion A/S. v. Hyman–Michaels Co.,* 406 *F.2d* 1039 (6th Cir.1969); *The TOLEDO,* 122 *F.2d* 255 (2 Cir.1941). These cases are distinguishable from the case at bar because they fail to address the very issue presented to this court, *i.e.,* whether a prospective indemnitee can assert a valid indemnitor/indemnitee relationship where there has been a settlement of the underlying claims which include good-faith claims unrelated to the indemnitor/indemnitee relationship.

Inmont and duPont contend that their settlement with Myatovich encompassed all claims based on the manufacture and distribution of a defective product. Consequently, the subsequent settlement between Myatovich and Central could not have encompassed any claims based on vicarious liability.

In *Cartel Capital Corp. v. Fireco of N.J., supra* the New Jersey Supreme Court held that a release, by way of settlement, of the primary or active tortfeasor does not automatically preclude a plaintiff from proceeding against the secondary or passive tortfeasor on a theory of strict liability. The finality of the release depends upon the intent of the parties in executing the release. *Id.* at 560, 410 *A.2d* 674. *See also, Breen v. Peck,*

28 *N.J.* 351, 146 *A.*2d 665 (1958). The released active tortfeasor may still be required to indemnify against the vicarious liability of the passive tortfeasor.

A review of the record in the present case reveals that the Myatovich/duPont–Inmont settlement was intended to release duPont and Inmont from all present and future claims based on the manufacture and distribution of defective products. Together, duPont and Inmont paid $775,000 to Myatovich in exchange for a release and an agreement to indemnify duPont and Inmont against any crossclaims for indemnification alleging strict liability. In considering the Myatovich's promise to indemnify duPont and Inmont against the crossclaims alleging strict liability, it is clear that the release was intended to extinguish any subsequent actions based on vicarious liability. Moreover, in both settlement discussions and, again, by way of letter to this court dated October 21, 1988, Myatovich's counsel expressly stated that it was his intention to proceed against Central on its failure "to pass along the warnings which were provided to them from the manufacturers" and the negligent distribution of paper masks not suitable for the intended use.

Central contends that the allegations of independent negligence were not substantiated by the evidence and constituted "mere pleadings" in compliance with New Jersey's trend towards liberal pleading. *Gruccio v. Baxter,* 135 *N.J.Super.* 290, 343 *A.*2d 145 (Law Div.1975); (holding that pleadings cannot consist of mere conclusions without facts but also stating that it is a "simple process to draft a complaint alleging negligence even though there would be no iota of evidence to support the allegation." *See also, Thomas v. Camden Trust Co.,* 59 *N.J.Super.* 142, 157 *A.*2d 355 (Law Div.1960). *Conrad v. Suhr,* 274 *N.W.2d* 571 (N.D.1979), (dealing with indemnification for attorneys fees in products liability actions and citing *Applegren v. Milbank Mutual Insurance Co.,* 268 *N.W.2d* 114 (N.D.1978)).

Central's potential liability, however, is based on more than bare allegations of independent negligence. The depositions

and affidavits indicate a genuine factual issue as to Central's independent responsibility for the distribution of the paper masks worn by Myatovich. Plaintiff's expert's reports set forth a proximate causation between the injuries sustained by Myatovich and the failure of these masks to prevent the inhalation of paint fumes.

It is asserted by duPont and Inmont, and not disputed by Central, that in the *Myatovich* action Central abdicated all responsibility for pre-trial discovery except for those claims asserting independent liability on its part. Nonetheless, Central refused to become a party to the Myatovich/duPont–Inmont settlement. Central contends that it ultimately settled with Myatovich for $32,500 in order to avoid a lengthy, complex and costly trial. However, considering Central's focused pre-trial discovery, it is clear that, at the time of settlement, Central was aware of the factual underpinnings of the *Myatovich* allegations.

Myatovich asserted good-faith claims against Central which potentially subjected Central to independent liability exclusive of its liability derived from its relationship with duPont and Inmont. Having chosen to settle with Myatovich to avoid a lengthy, complex and costly trial, it is necessary to examine the remedies available to Central in the present action. There appear to be a limited number of alternatives—a) require a full plenary trial on Central's liability, or b) determine the issue based on the record before the court on these cross-motions for summary judgment.

The first alternative implicates the strong policy considerations involving settlements. New Jersey maintains a strong public policy in favor of settlements. *Department of Public Advocate v. N.J. Board of Public Utilities*, 206 *N.J.Super.* 523, 503 *A.*2d 331 (App.Div.1985); *Pascarella v. Bruck*, 190 *N.J.Super.* 118, 462 *A.*2d 186 (App.Div.1983), Certif. den., 94 *N.J.* 600, 468 *A.*2d 233 (1983); *Bistricer v. Bistricer*, 231 *N.J.Super.* 143, 555 *A.*2d 45 (Ch.Div.1987). "An agreement to settle a lawsuit is

a contract which, like all contracts, may be freely entered into, and which a court, absent a demonstration of 'fraud or other compelling circumstances' shall honor and enforce as it does other contracts." *Bistricer, supra,* at 147, 555 *A.*2d 45 citing to *Pascarella, supra,* at 124–125, 462 *A.*2d 186.

In *Bistricer,* the court refused to set aside a settlement which was formulated and agreed upon orally but which raised objections once formalized in writing. The court found that the parties should not be permitted to set aside the settlement and thereby "avoid a fair agreement duly entered into to resolve pending and burdensome litigation". *Id.* at 151, 555 *A.*2d 45. Moreover, the court found that setting aside the settlement would "place an unfair burden on other litigants who must then wait longer for resolution of their disputes while an overburdened court system continues to wrestle with a dispute which the parties have fairly resolved." *Id.* at 151, 555 *A.*2d 45.

Central's claim for indemnification resuscitates the prospect of the complex and costly litigation which Central sought to avoid by its settlement. For the purpose of determining Central's right to indemnification, a trier of fact must make a finding as to Central's independent liability in the underlying *Myatovich* action. Such a finding requires a full evidentiary determination of the *Myatovich* claims. The resulting process is doubly burdensome and defeats the policy objectives encouraging settlements.

The second alternative provides a more effective resolution of the dispute. The record before this court on these cross-motions for summary judgment includes pleadings and discovery in the *Myatovich* action together with an expert report demonstrating, on their face, a prima facie basis for independent liability as against Central. In addition, the record includes the settlement transcript, as supplemented by Myatovich's counsel, indicating a preparedness to proceed against Central even after settlement with duPont and Inmont. Central had its opportunity to have its day in court to resolve its

independent liability. All parties were present and ready to proceed. Central chose a course of action which it felt to be in its best interests. It makes little sense to now require litigation of essentially all issues in order to test the wisdom of Central's earlier decision. Central settled based on its "potential" liability. All that need be shown by the parties here is that the "potential" was not simply illusory. The record before this court establishes a good faith basis for Myatovich to proceed against Central independent of Myatovich's claims against du-Pont and Inmont. The pre-settlement indicia of Central's potential independent liability is sufficient to preclude Central from its right to indemnification. Under the facts presented here, there is no right to indemnification where there has been a settlement encompassing good faith claims asserting liability against the settling party which claims are independent of those against the indemnitor.

In view of this court's finding that Central is not simply a vicarious tortfeasor and, consequently, not entitled to indemnification, this court need not consider Central's claim for counsel fees in indemnity actions.

New Jersey generally restricts the award of counsel fees except when explicitly authorized by statute, court rule, or a contractual obligation. *Atlas v. Silvan,* 128 *N.J.Super.* 247, 253, 319 *A.*2d 758 (App.Div.1974). Central acknowledges New Jersey's restrictive policy towards the award of counsel fees but urges that, in indemnity actions, New Jersey should adopt the more lenient approaches followed in other jurisdictions. Absent a valid claim for indemnification, there is no basis for an award of counsel fees. *R.* 4:42–9(a)(6).

Defendants duPont and Inmont's motions for summary judgment are granted. Plaintiff's motion is denied. The complaint is dismissed.