1999 ND 171

James E. NELSON and Kathleen F. Nelson, husband and wife, individually and as the surviving parents of Matthew E. Nelson, deceased, Plaintiffs and Appellees,

v.

Scott W. JOHNSON, Defendant and Appellant,

and

William Johnson and Michel J. DuFault, Defendants.

No. 980324.

Supreme Court of North Dakota.

Aug. 25, 1999.

H. Patrick Weir, Jr., Lee Hagen Law Office, Ltd., Fargo, for plaintiffs and appellees.

Bernard E. Reynolds, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for defendant and appellant.

MARING, Justice.

[¶ 1] Scott W. Johnson appealed from an amended judgment awarding James E. Nelson and Kathleen F. Nelson $825,-681.47 in a wrongful death action, and from an order denying his post-trial motion to deduct from the jury's damage award $175,000 the Nelsons received from a release and settlement agreement with an additional defendant, William Johnson. We affirm.

I

[¶ 2] On November 12, 1995, Matthew Nelson, the Nelsons' eight-year-old son, died from injuries suffered in an automobile accident in West Fargo, when Scott Johnson, who was driving his father's pick-up, collided with the Nelsons' vehicle. The Nelsons brought a wrongful death action against Scott and his father, William Johnson, and against Michel J. DuFault, the driver of another vehicle who was allegedly "[r]acing" with Scott Johnson when the accident occurred.

[¶ 3] Before trial, the Nelsons entered into a settlement agreement with William Johnson. In exchange for payment of $175,000, the Nelsons released and discharged William Johnson from liability "for the acts or omissions of Scott W. Johnson." The settlement agreement further provided:

> The [Nelsons] intend by this Release to only release William Johnson for vicarious liability of the type generally referred to in *Keator v. Gale,* 561 N.W.2d 286 (N.D.1997), and reserve all other claims against Scott W. Johnson and Michel J. DuFault as aforesaid. The [Nelsons] deny that William Johnson is a tortfeasor, joint or otherwise, with any other person regarding this claim, and they further declare this Release does not extend to any possible claim against William Johnson other than his said vicarious liability.

Scott Johnson was not a party to the settlement agreement and the agreement said nothing about deducting the settlement amount from a future jury verdict.

[¶ 4] At trial, Scott Johnson admitted liability, but contested the amount of damages claimed by the Nelsons. Scott Johnson moved for a directed verdict in his favor, arguing the Nelsons' release of William Johnson, who was vicariously liable under the family purpose doctrine, also released himself. He argued, alternatively, any damages found by the jury should be offset by the settlement proceeds paid by his father for release of his vicarious liability.

[¶ 5] The jury found Scott Johnson was negligent and his negligence was the sole proximate cause of the collision. The jury

found Michel DuFault was not negligent. The jury awarded the Nelsons $810,457.96 in compensatory damages against Scott Johnson.

[¶ 6] Scott Johnson moved after trial to have the $175,000 settlement proceeds subtracted from the jury verdict. The trial court refused to subtract the settlement amount from the jury verdict, reasoning:

> William Johnson is not a joint tort-feasor with Scott. Scott was not a party to the Release nor is he a beneficiary of it. The $175,000.00 paid by William was not a contribution to an award, but a settlement of a claim against him.

The court entered an amended judgment awarding the Johnsons $825,681.47. Scott Johnson appealed.

## II

[¶ 7] There are no factual disputes in this appeal. The issue in this case, which involves the application and interpretation of statutes and decisional law, is a question of law fully reviewable by this Court. *Narum v. Faxx Foods, Inc.*, 1999 ND 45, ¶ 18, 590 N.W.2d 454.

[¶ 8] William Johnson's liability was premised solely on the family purpose doctrine. That doctrine, adopted by this Court 80 years ago, is founded on the theory the driver of a family car, in pursuit of recreation or pleasure, is engaged in the owner's business and is viewed as either the agent or servant of the owner. *E.g., Schobinger v. Ivey*, 467 N.W.2d 728, 729 (N.D.1991). The respondeat superior theoretical basis for the doctrine is a fiction created in furtherance of the public policy of giving an injured party a cause of action against a financially responsible defendant. *E.g., Herman v. Magnuson*, 277 N.W.2d 445, 455 (N.D.1979). Under the family purpose doctrine, the owner of the vehicle is not liable for his own negligence, but is vicariously liable for the tortious acts of the driver. *See Nelson v. Gillette*, 1997 ND 205, ¶ 10, 571 N.W.2d 332. William Johnson paid the Nelsons $175,000 to release himself from this "vicarious liability

of the type generally referred to in *Keator v. Gale* . . . ."

[¶ 9] In *Keator v. Gale*, 1997 ND 46, 561 N.W.2d 286, we held the release of a master's vicarious liability does not, as a matter of law, release the directly negligent servant's primary liability. We distinguished *Horejsi v. Anderson*, 353 N.W.2d 316, 318 (N.D.1984), in which this Court held the release of an employee constituted a release of the "single share" of liability attributable jointly to the master and servant, and thus the master's vicarious liability was also released. In *Keator*, 1997 ND 46, ¶¶ 11, 13–14, 561 N.W.2d 286, we rejected the argument that the release of the vicariously liable employer must also release the servant's liability, reasoning:

> There are far different policy concerns presented when an actively negligent tortfeasor seeks to escape liability by a plaintiff's release of a vicariously liable master. The result in *Horejsi* is premised to a great degree upon the active/passive distinction between the liability of the servant and the master. A master's vicarious liability is based entirely upon the underlying wrongful conduct of the servant, not upon any active wrongdoing by the master. Thus, release of the servant "remove[s] any foundation upon which to impute negligence to the employer." *Horejsi* at 319 (quoting *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625, 628 (1972)).

. . . .

> The result in *Horejsi* was effectively pre-ordained by the nature of a *Pierringer* release and the vicariously liable master's right to indemnity against the servant. The plaintiff's agreement to indemnify the settling defendant for any subsequent claims for indemnity or contribution is an "indispensable characteristic" of a *Pierringer* release. *Kellen [v. Mathias*, 519 N.W.2d 218, 222 (Minn. Ct.App.1994) ]. A vicariously li-

able party is entitled to indemnity from the party who directly caused the injury. *Horejsi* at 318–319. We thus noted in *Horejsi* that a circle of indemnity would be created if the release of the servant did not release the vicarious liability of the master: If the plaintiff recovered at trial from the non-settling master, the master would have a right of indemnity against the released servant, who, under the terms of the release, would have a right of indemnity against the plaintiff. Thus, the circle is completed, leaving the plaintiff with no additional recovery through the suit against the master. *See Horejsi* at 318–320. The release of the servant effectively precludes any meaningful recovery from the vicariously liable master. *Horejsi; see also Thompson v. Brule,* 37 F.3d 1297, 1301 (8th Cir. 1994); *Jakubs v. Fruehauf Corp.,* 435 F.Supp. 908, 908 (N.D.Ill.1977); *Kellen* at 222.

The result is vastly different when the master is released and the negligent servant is sued. Because the servant has no corresponding right to indemnity from the master, the circle of indemnity does not exist. Unlike the situation in *Horejsi,* [the employee] has no right of indemnity against his employer … for damages he may be ordered to pay for his own negligent conduct. Thus, the policy concerns expressed in *Horejsi* are absent in this case.

 [¶ 10] Under our analysis in *Keator* and *Horejsi,* the Nelsons' settlement with and release of William Johnson did not constitute a release of Scott Johnson.

 [¶ 11] Scott Johnson makes a three-pronged argument to support his position the settlement amount should have been deducted from the jury verdict. He con-

tends: (1) N.D.C.C. § 32–38–04(1) compels this result; (2) a refusal to deduct the settlement amount from the verdict would result in a double recovery; and (3) it would be inequitable to hold him liable in excess of the amount of damages assessed by the jury.

[¶ 12] When enacted in 1957, N.D.C.C. § 32–38–04(1) provided:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more *persons liable in tort* for the same injury or the same wrongful death:
>
> 1. It does not discharge any of the other *tort-feasors* from liability for the injury or wrongful death unless its terms so provide; but *it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater.*

(Emphasis added).

 [¶ 13] As enacted, N.D.C.C. § 32–38–04(1) might have supported Scott Johnson's position. *See Levi v. Montgomery,* 120 N.W.2d 383, 389 (N.D.1963). However, in *Bartels v. City of Williston,* 276 N.W.2d 113, 120–22 (N.D.1979), this Court ruled the Legislature's enactment of the comparative negligence act, N.D.C.C. § 9–10–07,[1] impliedly repealed and amended N.D.C.C. § 32–38–04(1) to provide that in determining the right of a tortfeasor to contribution in a comparative negligence action, the pro rata shares of the common liability are to be determined in proportion to the percentage of negligence attributable to each tortfeasor under N.D.C.C. § 9–10–07, and not by the amount stipulated in the release or the amount of consideration paid for the release.[2] The

---

1. The provisions of N.D.C.C. § 9–10–07 were repealed by the Legislature in 1993. *See* 1993 N.D. Sess. Laws ch. 324, § 1. The current provisions for comparative fault are found in N.D.C.C. § 32–03.2–02. *See Maurer v. Wagner,* 509 N.W.2d 258, 261 n. 4 (N.D.1993).

2. The *Bartels* Court held N.D.C.C. § 32–38–04(1) was amended to read that a release: does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others

terms of N.D.C.C. § 32–38–04(1), as impliedly repealed and amended, do not support Scott Johnson's argument the amount of the settlement should have been deducted from the jury's verdict.

[¶ 14] In *Bartels,* 276 N.W.2d at 123, this Court cautioned "[t]he absence of a general release or a different set of facts conceivably could produce different answers." Scott Johnson argues this is precisely such a case in which the statute should be "read as written" because William Johnson's liability was premised on vicarious liability rather than his conduct or fault, and it was not possible under the post-*Bartels* construction of N.D.C.C. § 32–38–04(1) to assign a percentage of fault to each defendant or to attribute damages to each on a pro-rata basis. However, the statute speaks in terms of "persons liable in tort" and "tort-feasors." Vicarious liability is grounded in agency law rather than tort law, and a tortfeasor is viewed as a wrongdoer while a vicariously liable master is free from any fault. Construing similar statutes, numerous courts have ruled a master or principal is not a "tortfeasor" as the term is used in their versions of N.D.C.C. § 32–38–04(1) of the Uniform Contribution Among Tortfeasors Act. *See, e.g., Arnold v. Colorado State Hosp.,* 910 P.2d 104, 107 (Colo.App.1995); *Bristow v. Griffitts Const. Co.,* 140 Ill.App.3d 191, 94 Ill.Dec. 506, 488 N.E.2d 332, 335 (1986); *Elias v. Unisys Corp.,* 410 Mass. 479, 573 N.E.2d 946, 947–48 (1991); *Theophelis v. Lansing General Hosp.,* 430 Mich. 473, 424 N.W.2d 478, 483 (1988). *But see Saranillio v. Silva,* 78 Hawai'i 1, 889 P.2d 685, 697 (1995); *Yates v. New South Pizza, Ltd.,* 330 N.C. 790, 412 S.E.2d 666, 669 (1992). Even if we were to conclude a vicariously liable master is a "tortfeasor" under N.D.C.C. § 32–38–04(1), we do not believe the circumstances in this case are sufficient to invoke the *Bartels* exception.

to the extent of the relative degree of fault (percentage of negligence) attributable to the released joint tort-feasors.

[¶ 15] This Court has frequently recognized in a variety of contexts the impermissibility of a double recovery and the desirability of avoiding it. *See, e.g., Sargent County Bank v. Wentworth,* 547 N.W.2d 753, 758 (N.D.1996); *Wyatt v. R. D. Werner Co., Inc.,* 524 N.W.2d 579, 581 (N.D.1994); *Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445, 454 (N.D.1994). But Scott Johnson's claim of double recovery under these circumstances rings hollow, because settlement amounts are not synonymous with damages. In *Houser v. Gilbert,* 364 N.W.2d 62 (N.D.1985), we implicitly recognized this fact. A jury returned a verdict finding the non-settling defendant 100 percent liable for a wrongful death, and awarded the plaintiffs $378,000. The other defendants, who had settled with the plaintiffs for $250,000 and had been assessed no negligence by the jury, sought to recover from the non-settling defendant the $250,000 they had paid the plaintiffs to settle the claims against them. This Court rejected the settling defendants' argument:

The $250,000 paid by [the settling defendants] was not a contribution to an award but a settlement of a claim. [The settling defendants] are, therefore, not entitled to recover contribution from [the non-settling defendant]. Nor have [the settling defendants] shown any right to indemnification.

*Houser,* 364 N.W.2d at 65.

[¶ 16] It is illogical to presume that a jury's award of damages against one tortfeasor encompasses the settlement amount received by the injured plaintiff, and that the verdict must serve as a cap on the total recovery by the plaintiff. Settlement dollars are merely a contractual estimate of the settling tortfeasor's liability and include not only damages, but also the value of avoiding the risk and expense of trial. *See Neil v. Kavena,* 176 Ariz. 93, 859 P.2d 203, 206 (App.1993); *Wells v.*

*Bartels,* 276 N.W.2d at 121.

*Tallahassee Mem. Med. Center*, 659 So.2d 249, 252 (Fla.1995); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 431 (Tex. 1984). As the court explained in *Duncan*, 665 S.W.2d at 431–32:

> [S]ettlement dollars are not the same as damages. Settlement dollars represent a contractual estimate of the value of the settling tortfeasor's liability and may be more or less than the proportionate share of the plaintiff[']s damages. The settlement includes not only damages, but also the value of avoiding the risk, expense, and adverse public exposure that accompany going to trial. There is no conceptual inconsistency in allowing a plaintiff to recover more from a settlement or partial settlement than he could receive as damages.

[¶ 17] Moreover, there is a public policy in this state to encourage settlements and to discourage litigation. *See Vandal v. Peavey Co.*, 523 N.W.2d 266, 268 (N.D.1994); *State of Minnesota v. Snell*, 493 N.W.2d 656, 658 (N.D.1992); *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 805 (N.D.1983). It is obvious in this case one of the primary reasons for William Johnson's settlement was to protect himself from exposure to an excess verdict. Courts in comparative negligence jurisdictions have recognized allowing settlement amounts to be deducted from jury verdicts would discourage, rather than encourage, settlements. In *Kussman v. City and County of Denver*, 706 P.2d 776, 782 (Colo. 1985), the court reasoned:

> Not deducting the settlement amount from the judgment against the [non-settling tortfeasor] promotes the [Uniform Contribution Among Tortfeasors] Act's goal of encouraging settlements. If the plaintiff knew that any settlement reached would be deducted from the proportionate share owed to the plaintiff by another tortfeasor, the plaintiff would be less likely to settle. Similarly, tortfeasors might refuse to settle, hoping that their just share of damages would

be reduced by the settlement amount paid by another tortfeasor.

*See also Charles v. Giant Eagle Markets*, 513 Pa. 474, 522 A.2d 1, 3 (1987).

[¶ 18] We are unpersuaded by Scott Johnson's argument that refusing to deduct the settlement amount from the jury verdict results in an inequity. To the contrary, deducting the settlement amount from the verdict would result in nothing more than a windfall for a non-settling tortfeasor. In *Roland v. Bernstein*, 171 Ariz. 96, 828 P.2d 1237, 1239 (App.1991), the court articulated compelling policy reasons for rejecting a similar contention:

> [W]e believe that it would be anomalous to give the benefit of an advantageous settlement, not to the plaintiff who negotiated it, but to the non-settling tortfeasor. Had plaintiff made a disadvantageous settlement, she would have borne that consequence because her recovery against [the non-settling defendant] would have been limited to [the amount of the non-settling defendant's fault]. At a minimum, symmetry requires that if the disadvantage of settlement is hers so ought the advantage be. Beyond that, we see no reason why a non-settling tortfeasor ought to escape the liability that is his by reason of the faulty assessment of probabilities by a settling tortfeasor. Indeed, such a rule might well discourage settlement by the last tortfeasor on the reasoning that his exposure is limited to his degree of fault and even that might be reduced by reason of pre-existing settlements.

*See also Varner v. Perryman*, 969 S.W.2d 410 (Tenn.App.1997).

[¶ 19] Scott Johnson argues because he could be held liable to indemnify William Johnson under *Keator* and *Horejsi*, it would be an especially egregious inequity if he also were held liable to the Nelsons for the entire damages verdict. While William Johnson, as the vicariously liable master, may be entitled to indemni-

ty [3] from Scott Johnson, courts addressing claims of indemnification brought by vicariously liable parties against the parties who directly caused the injury for amounts paid in settlement of their potential vicarious liability have placed some restrictions on the scope of this right. *See, e.g., Parfait v. Jahncke Service, Inc.*, 484 F.2d 296, 304–05 (5th Cir.1973) (holding once duty to indemnify is established in contract or tort, indemnitee must show settlement is reasonable and associated with the indemnitee's potential liability); *Metropolitan Dade County v. Florida Aviation Fueling Company, Inc.*, 578 So.2d 296, 298 (Fla.Ct. App.1991) (holding vicariously liable party may claim indemnity from responsible party upon proof of its potential vicarious liability to plaintiff and the reasonableness of the settlement); *Central Motor Parts Corp. v. E.I. duPont deNemours and Co., Inc.*, 251 N.J.Super. 34, 596 A.2d 773, 776 (L.1989), *aff'd in part and remanded in part*, 251 N.J.Super. 5, 596 A.2d 759 (A.D. 1991) (holding indemnitee must show the indemnitee's claims are based on a valid, pre-existing indemnitor/indemnitee relationship; the indemnitee faced potential liability for the claims underlying the settlement; and the settlement amount was reasonable); *Griffin v. Van Norman*, 302 S.C. 520, 397 S.E.2d 378, 380 (Ct.App.1990) (holding vicariously liable party may recover the cost of settlement from responsible party if the settlement is bona fide, with no fraud or collusion by the parties; if, in the circumstances, the decision to settle is a reasonable means of protecting the innocent party's interest; and if the amount of the settlement is reasonable in light of the third party's estimated damages and the risk and extent of defendant's exposure if the case is tried). *See also* 41 Am.Jur.2d *Indemnity* § 46 (1995).

[¶ 20] Here, the parties informed us William Johnson has not filed an indemnity action against Scott Johnson. We have said " '[i]ndemnity is an equitable doctrine not amenable to hard and fast rules,' " *Troutman v. Pierce, Inc.*, 402 N.W.2d 920, 924 (N.D.1987), *quoting Herman v. General Irrigation Co.*, 247 N.W.2d 472, 480 (N.D.1976), and rather than using strict standards, courts must examine carefully both parties' conduct in light of general notions of justice. *Sayler v. Holstrom*, 239 N.W.2d 276, 279 (N.D.1976). In light of our rejection of Scott Johnson's argument that refusing to deduct the settlement from the jury verdict results in an inequity and in the absence of an indemnification action, we conclude his claims of inequity are not persuasive. We decline to rule the mere possibility of an indemnity action against Scott Johnson, the only adjudicated wrongdoer in this case, is so inequitable that reduction of the jury verdict by the amount of the settlement is required for his benefit.

[¶ 21] We conclude the trial court did not err in refusing to reduce the jury's damage award by the amount of William Johnson's settlement with the Nelsons.

**3.** Indemnification is a remedy which enables a person to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other. *GeoStar Corp. v. Parkway Petroleum, Inc.*, 495 N.W.2d 61, 68 (N.D.1993); N.D.C.C. ch. 22–02. A right to indemnity exists if one party is exposed to liability by the action of another party who, in law or equity, should make good the loss of the other. *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Cas. Co.*, 482 N.W.2d 600, 605 (N.D.1992). The right to contribution rests upon common liability, which exists when two or more actors are liable to an injured party for the same damages. *Butz v. Werner*, 470 N.W.2d 224, 225–26 (N.D.1991); *Sayler v. Holstrom*, 239 N.W.2d 276, 279 (N.D.1976); N.D.C.C. § 32–38–01. Under the modified comparative fault statute, N.D.C.C. § 32–03.2–02, a right to contribution between two tortfeasors arises only if they acted "in concert." *Target Stores v. Automated Maintenance Serv., Inc.*, 492 N.W.2d 899, 902 (N.D.1992). *See also Reed v. University of North Dakota*, 1999 ND 25, ¶¶ 28–34, 589 N.W.2d 880.

### III

[¶ 22] The amended judgment and the order denying Scott Johnson's post-trial motion are affirmed.

[¶ 23] VANDE WALLE, C.J., KAPSNER, SANDSTROM and NEUMANN, JJ., concur.

