JOHN ROBERTSON, MAYOR OF WASHINGTON TOWNSHIP, PLAINTIFF, v. THE WASHINGTON TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, DEFENDANT.

THE WASHINGTON TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, PLAINTIFF, v. JOHN ROBERTSON, THE MAYOR OF WASHINGTON TOWNSHIP, DEFENDANT.

Superior Court of New Jersey
Law Division Gloucester County

Decided February 19, 1986.

*Joseph A. Alacqua,* for John Robertson, Mayor of the Township of Washington (*Alacqua & Wiltsee,* attorneys).

*James E. Rafferty,* for The Washington Township Municipal Utilities Authority (*Rafferty & Costa,* attorneys).

EDWARD S. MILLER, J.S.C.

These consolidated in lieu of prerogative writs cases involve a dispute between the Mayor, Council and the Municipal Utilities

Authority of the Township of Washington, Gloucester County, and require the court to interpret a recent amendment to the Faulkner Act (*N.J.S.A.* 40:69A–1 *et seq.*), defining and redistributing certain powers between the mayor and council in municipalities governed thereunder. The facts have been agreed to and the parties have stipulated that the record before the court is sufficient to permit it to render judgment.

The salient facts are as follows:

1. The Township of Washington is a municipality in Gloucester County, being governed by one of the alternate plans provided in the Faulkner Act, *N.J.S.A.* 40:69A–1 *et seq.*, the powers of government being divided between the mayor and council.

2. The Washington Township Municipal Utilities Authority, hereinafter referred to as MUA, was duly established under the provisions of the Municipal Utilities Authorities Law, *N.J.S.A.* 40:14B–1 *et seq.* The proper corporate existence of the two bodies is conceded and since both bodies were in existence well-prior to the acts complained of, no further discussion thereof is necessary.

3. John Robertson is the duly elected mayor of Washington Township and his status as such and authority to perform such duties as are properly confided to him is not contested.

4. On January 2, 1986, Mayor Robertson made one appointment for a five-year term to the MUA and two appointments, one for a five-year term and one for a four-year term as alternate members thereof, and, on the same date, those individuals were sworn into office by the township clerk and their memberships certified to the MUA.

5. On January 2, 1986, the Township Council of the Township of Washington appointed, not the individuals appointed by Mayor Robertson, but certain others to the same vacancies as members or alternate members of the MUA.

6. On January 29, 1986, the MUA, by resolution, accepted and seated the members appointed by the township council and

not the members appointed by the mayor, which appointments were rejected. An action to reverse this was brought by the mayor and is one of the two actions consolidated herein.

7. A regularly scheduled meeting of the MUA was held on January 13, 1986. At that meeting, Mayor Robertson presented himself, seated himself at the board table, and advised the board that, pursuant to recent amendments of the Faulkner Act, he considered himself an *ex officio* member of the MUA and would continue to attend the meetings thereof in that capacity and participate in said meetings. The MUA thereupon filed an action to restrain the mayor from this course of conduct. This is the second of the two consolidated actions.

The disputes between the parties center on varying interpretations of chapter 374 of the Laws of 1985 approved by the Governor on November 26, 1985, and by its terms, effective immediately. This statute, formerly known as *Senate Bill* 1206, amends various sections of the Faulkner Act municipalities. The disputes obviously involve two questions:

1. Is the mayor an *ex officio* member of the MUA, and

2. Wherein does the power of appointment to the MUA lie.

### I.

### The Mayor's Status.

▮ Paragraph five of the new statute amends *N.J.S.A.* 40:69A–40 and reads, insofar as it is applicable, as follows:

The Mayor shall

*l*) serve as an *ex officio* non-voting member of all appointed bodies in municipal government of which he is not an official voting member.

It is by virtue of this paragraph that the mayor claims *ex officio* membership in the MUA. The question thus presents itself, whether, since the MUA is obviously an appointed body, it is the appointed body in *municipal government.* An examination of the statute authorizing the creation of the MUA suggests that it is not.

The MUA is created under the authority of the Municipal Utilities Authorities Law, *N.J.S.A.* 40:14B–1 *et seq.* Section

40:14B–20, dealing with the powers of the MUA, provides that: "every municipal authority shall be a public body politic incorporate constituting a political subdivision of the state." Such an authority becomes the *alter ego* of the municipality and acts in the place of the municipality in discharging its function. It logically follows, therefore, that the MUA is not to be considered as being one of the "appointed bodies in municipal government" as defined in the statute. For this reason, the actions of the mayor, while well-intentioned and honorable, had no basis in law and he should not be considered as such an *ex officio* member.

## II.

### Power Of Appointment.

The problem of who has the power of appointment after the passage of the new statute is a little more intricate. The original statute, *L.*1957, *c.* 183, dealing with the appointment to the body, provided "said body shall consist of the five members thereof, who shall be appointed by resolution of the governing body as hereinafter in this section provided." The remainder of the subsection, dealing with subsequent appointments, is silent as to the manner of such appointment, but it is inferable from the language of the statute that the manner of appointment would be by resolution. Subsequent amendments of the statute made no significant changes.

The question of appointment by resolution is significant in light of the history of the recent amendment, chapter 374, Laws of 1985. The original draft of the appropriate section, § 6, provided:

Whenever the governing body is authorized by any provision of general law to appoint the members of any board, authority or commission, such power of appointment shall be deemed to vest in the mayor with the advice and consent of the council, *unless the specific terms of that general law clearly require a different appointment procedure.*

After the original bill, as amended, passed both houses of the legislature and was submitted to the Governor, on August 28, 1985, pursuant to constitutional provisions, he returned the bill

to the Senate with a detailed statement of objections and recommendations for amendment. One paragraph of this communication reads as follows:

I am suggesting technical amendments to insure that where general law now clearly requires action by council resolution in these Faulkner Act municipalities, this legislation will not modify that procedure. . . .

Included in the detailed list of suggested recommendations was the 11th thereof, which specifically amended § 6 to include the words "or appointment by resolution in which case the appointment shall be made by the Council."

It will thus be noted that the underscored words of the quoted section of the statute include the specific language recommended by the Governor.

Under the circumstances, it would appear that the appointing power to the MUA should remain in the hands of the council, since appointments to this body are one of those which are required to be made by resolution.

In summary, the mayor is not an *ex officio* member of the MUA, nor does he have the appointing power thereto.

Let an appropriate order be submitted.