231 N.J. Super. 143 (1987)
555 A.2d 45
HERMAN BISTRICER, TOWER INVESTMENTS OF MIAMI, INC., AND RHINE INVESTMENTS, N.V., PLAINTIFFS,
v.
MOISHE BISTRICER, DAVID BISTRICER, BISTRICER GROUP, BIST MANAGEMENT CORP. AND DORIC REALTY CO., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Hudson County.
Decided November 14, 1987.
*144 James S. Rothschild, Martin Flumenbaum, for plaintiffs (Paul Weiss Rifkind Wharton & Garrison, attorneys).
Morton S. Bunis, for defendants.
HUMPHREYS, A.J.S.C.
This case is a complex, inter-family struggle over the ownership and profits of Doric, a valuable apartment house complex.[1] The complex is being converted to condominiums. Defendant David Bistricer is the managing partner; plaintiff Herman Bistricer is a limited partner.
Resolved in this opinion is whether the parties settled the case at a settlement conference with the court. At issue is the validity of a "settlement" placed on the record and later to be "fleshed out" in writing. The parties cannot agree on the writing.
Plaintiffs contend that the case was not settled at the settlement conference. They argue that the "settlement" was subject to the drafting and signing of a written settlement agreement. A written agreement was prepared which embodied the basic terms agreed upon at the settlement conference. Plaintiffs *145 however raised numerous objections to the written agreement.
After careful consideration the court finds as follows. The parties agreed on the essential terms of a settlement of this litigation. These terms are sufficiently clear for the settlement to be implemented fairly. Plaintiffs' objections to the written agreement either amount to the raising of new terms not previously agreed upon by the parties, or are matters relating to how the settlement should be implemented. In neither case should the settlement reached by the parties be disturbed.
The settlement is valid and will be implemented in a fair and reasonable manner under the court's supervision. The court's reasons for these findings are as follows.

I.
Plaintiffs started this chancery suit in January 1986 alleging that defendants had refused to accord plaintiffs rightful majority status, failed to pay plaintiffs monies owed, failed to disclose financial information and violated fiduciary duties to plaintiffs and Doric.
Plaintiffs sought orders confirming their alleged majority ownership of Doric; enjoining defendants from transferring or selling any interest, title or right in Doric; appointing a temporary receiver; confirming plaintiffs alleged right to manage Doric; removing defendants as general partners of Doric; compelling defendants to pay monies allegedly owed; compelling an accounting; and appointing an auditor.
The case was assigned to this court for a settlement conference. On July 9, 1987 this Court conducted a lengthy settlement conference. Counsel and the court conferred in chambers. The principals were in the courtroom and from time to time counsel would confer with them.
At the settlement conference the court perceived the issues to fall within four categories: (1) what was the financial interest each party had in Doric; (2) what commissions should defendant *146 managing partner receive for sale of the condominiums; (3) how to: (a) ascertain whether defendants had properly managed Doric; and (b) determine and credit the nonmanaging partner with any monetary adjustments properly due; and (c) protect the nonmanaging partner during continuance of the business.
Based on those principles, the parties, with the aid of the court, reached the following agreement late in the evening of July 9, 1987.
(1) The partnership interests would be divided 40.5% to plaintiffs and 59.5% to defendants.
(2) Defendant David Bistricer would receive a 5% commission on condominium sales and a 5% management fee. Commissions to others would be netted out.
(3) If the settlement resulted in "unfair and inequitable substantial past tax consequences" for David Bistricer, then there would be an adjustment in his favor.
(4) Provisions would be made to protect the minority interests during management.
(5) Each party would choose an accountant and a joint accounting would be made.
(6) The court would retain jurisdiction to resolve any disputes concerning the implementation.
The above agreement is essentially reflected in the court's contemporaneous notes of the settlement conference.
However, at the end of the settlement conference, a snag arose concerning when the agreed-upon division of partnership interests would begin. Plaintiffs' position was that the 40.5% and 59.5% would apply from the inception of the partnership in 1980. Defendants' position was that some later date should be used. The conference concluded with both sides to reflect further on the one open item.
The next day a telephone conference took place at which defendants conceded to plaintiffs' position on this open item, and the court marked the case settled subject to counsel's *147 submitting an order. The telephone conference was transcribed by the court reporter.
Thereafter counsel for defendants prepared a stipulation of settlement and forwarded it to plaintiffs' counsel. Plaintiffs did not agree to the stipulation. The court conducted a hearing as to whether the case had been settled and, if so, what were the terms. At the end of the hearing the court reserved decision.

II.
This state has a strong public policy in favor of settlements. Department of Public Advocate v. N.J. Board of Public Utilities, 206 N.J. Super. 523, 528 (App.Div. 1985); Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App.Div. 1983), certif. den., 94 N.J. 600 (1983); Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App.Div. 1961), certif. den., 35 N.J. 61 (1961); Honeywell v. Bubb, 130 N.J. Super. 130 (App.Div. 1974). Courts will therefore "strain to give effect to the terms of a settlement wherever possible." Dept. Pub. Adv., 206 N.J. Super. at 528.
"An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into, and which a court, absent a demonstration of `fraud or other compelling circumstances' shall honor and enforce as it does other contracts." Pascarella v. Bruck, supra, 190 N.J. Super. at 124-125.
That the agreement was to be memorialized in writing makes it no less a contract where, as here, the parties concluded an agreement by which they intended to be bound.... [P]arties may orally, by informal memorandum, or by both agree upon all the essential terms of the contract and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking. [Id. at 126; see also Comerata v. Chaumont, Inc., 52 N.J. Super. 299, 305 (App.Div. 1958).]
A settlement stipulation should not be enforced "where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." Kupper v. Barger, 33 N.J. Super. 491, 494 (App.Div. 1955.)
*148 Nevertheless, as was said in Berg Agency v. Sleepworld, 136 N.J. Super. 369, 376 (App.Div. 1975),
... [I]t is not necessary for a writing to contain every possible contractual provision to cover every contingency in order to qualify as a completed binding agreement. Some of these issues may be determined by the operation of law, or the parties may resolve such differences by a subsequent agreement or a contract may be silent in those respects. In any event a contract is no less a contract because some preferable clauses may be omitted either deliberately or by neglect. So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound. Such is the just and fair result ... A prime example of a bare contract which does not contain many of the ultimate refinements of the undertaking of the parties is an insurance binder. Such a binder is a mere outline of the obligations undertaken by an insurance company. Yet it is universally held to constitute a binding contract for the limited period involved, on terms which are normally included in the ultimate policy issued by the insurance company ... This illustration is cited not as an exact parallel to the facts herein, but rather to demonstrate that the absence of some provisions in a document does not necessarily negate its viability as a binding agreement.
The key factor is not the absence of any contractual undertakings which may normally be undertaken by contracting parties engaged in a similar transaction. It is rather the intent of the particular parties involved in the transaction at issue. And the presence or absence of essential contract provisions is but an element in the evidential panorama underlying a factual finding of intent and enforceability. [Id. at 377]

III.
Plaintiffs contend that they had not intended to enter into a binding settlement agreement on July 9 and July 10, but had only agreed to the "framework of a settlement" which would be subject to later agreement in a written settlement agreement.
However, a careful analysis of plaintiffs six "remaining areas of dispute" does not support that position. Those six objections can be summarized as follows.
1. A dispute as to what amount, if any, should be withheld to fund a working capital account.
2. Whether defendant David Bistricer should be the exclusive agent for all future sales of apartments.
3. Whether David Bistricer should be entitled to charge to the partnership the advertising expenses in connection with those sales.
*149 4. A "possible dispute" as to whether David Bistricer should continue as managing agent after the end of 1987.
5. "The parties appear to be in dispute" over whether the accountants should be granted access to the personal books and records of the two brothers.
6. Whether plaintiffs should be indemnified for (a) any payments resulting solely from the actions of defendants, and (b) for any adverse tax consequences. The first objection is moot since plaintiff has agreed to withdraw this provision if the court determines a fair amount.
Objections three to six are either new terms sought by plaintiffs or pertain to the fair implementation of the settlement. They are not the essentials of the settlement. Their absence does not indicate a "lack of mutuality of accord between the partners or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms." Kupper v. Barger, supra, 33 N.J. Super. at 494.
Moreover, if these matters do constitute gaps in an agreement, that does not mean that the entire agreement must be set aside. This is especially true when the agreement is a comprehensive settlement of a court action. The just result is to address and resolve the "gaps" in the context of a fair and reasonable implementation of the court settlement under the court's agreed upon supervision.
The final objection (two) is characterized by plaintiffs as the major objection. Plaintiffs contend that they never agreed to give David Bistricer an "exclusive" agency to sell "all" the apartments. The parties have apparently agreed to divide the apartments. Plaintiffs want to sell "their" apartments themselves and not pay David Bistricer a 5% commission on those apartments.
However, David Bistricer apparently previously had an agency to sell all the apartments. If plaintiffs had wished to *150 change the status quo, they would likely have raised this issue on July 9 or 10, or during the ensuing weeks while the written document was being prepared by defendants' counsel.
Plaintiffs could easily have raised this issue during the lengthy settlement negotiations on July 9. The principals were present in court. Very competent New Jersey and New York counsel were present. The settlement was discussed and negotiated at great length. Yet, this issue was never raised. The natural inference is that it was, and is, not an essential part of any settlement. Plaintiffs attempted raising of it now is an afterthought; something they would like to have but did not bargain for and obtain. Put another way, if it were not important enough to raise during the lengthy negotiations on July 9 and 10, it is not an essential part of the settlement.
Plaintiffs profess concern that if David Bistricer retains an exclusive sales agency then he will be in a position to "steer" the sales toward "his" apartments and thereby injure plaintiffs. However, the conduct of the business, will be monitored by accountants and the court. Experienced counsel and accountants can surely devise means of protecting plaintiffs. The court will impose whatever reasonable conditions are necessary to prevent plaintiffs from being unfairly treated.
Plaintiffs have in their most recent submissions raised questions as to the terms of David Bistricer's prior sales agency. Plaintiffs also question how the prices for the condominiums should be established. These are all issues essentially dealing with the implementation of the settlement. They do not detract from the fact that the parties in the settlement agreed to give defendant David Bistricer a 5% commission on sales. The existence of these issues does not abort the settlement. The court will consider these issues under the court's agreed upon retained jurisdiction to implement the settlement in a fair manner.
The court does not accept plaintiffs' overall position that this settlement was subject to the parties later signing a written document. Martin Flumenbaum, New York counsel for plaintiffs, *151 did not clearly and specifically so advise the court during the July 10 telephone conversation. He is an able attorney who chooses his words carefully. If that were Flumenbaum's intent he could and would have so stated. The court did not and does not construe Flumenbaum's statements during the telephone conference to mean that he was reserving to his client an opportunity to escape the agreed-upon terms of the settlement by later raising additional terms or by later disagreeing on language to implement the settlement.
The policy of our court system is to encourage settlements and the court should "strain" to uphold such settlements. Dept. Pub. Adv. v. N.J. Bd. of Public Utilities, supra, 206 N.J. Super. at 528. Here the parties agreed to the essential terms of a settlement. Plaintiffs' objections are basically either "afterthoughts" or pertain to implementation of the settlement. Setting aside the settlement under these circumstances would allow plaintiffs to avoid a fair agreement duly entered into to resolve pending and burdensome litigation. This would be unfair to defendants. It would also place an unfair burden on other litigants who must then wait longer for resolution of their disputes while an overburdened court system continues to wrestle with a dispute which the parties have fairly resolved.
The limited and strained resources of the New Jersey courts are ill used by what has occurred in this case. This court expended most of a day in settlement negotiations in one case, finally culminating at 7:00 in the evening in a probable settlement which was then confirmed the next day. Later one party seeks to have the settlement set aside because that party doesn't agree on appropriate language to "flesh out" the settlement agreement. If the New Jersey court system permits itself to be used in such a manner, then lengthy settlement conferences in major complex cases will be a waste of time and the growing backlogs of our New Jersey courts will grow much bigger.
Moreover, the proposition that a case is not settled until the last "i" is dotted and the last "t" is crossed on a written *152 settlement agreement carries the germ of much mischief. A party could, in bad faith, waste the time of the court and the other litigant in protracted settlement negotiations, and then, after a "framework" has been established, wiggle out of that framework by creating a flood of new issues and questions. Conceivably that could be the case here.
The court is satisfied that the bargain "clearly was struck." Pascarella v. Bruck, supra, 190 N.J. Super. at 126. As Judge McElroy said in that case "if later reflections were the test as to the validity of such an agreement, few contracts or settlements would stand." Ibid. As Judge Long wrote in Dept. of Public Advocate, "second thoughts are entitled to absolutely no weight as against our policy in favor of settlement." 206 N.J. Super. at 530.
In sum, this case was settled on July 9 and 10 as set forth herein. The settlement will be implemented in a fair and reasonable manner under court supervision. The parties will attempt to reach an agreement as to the language of a written memorialization of the settlement and as to implementation. If the parties cannot do so within 20 days, they shall notify the court and a hearing will be held. The court will also confer with counsel informally if they both desire. Counsel for defendants will submit a form of order.
NOTES
[1] This is a refinement of a written opinion.