Frank S. CANDELIERE, Jr., et al.

v.

USA, et al.

Civ. A. No. 89–934.

United States District Court,
D. New Jersey.

June 30, 1992.

William H. Eaton, Korona, Beides, Eaton, Mark & Santiago, Jersey City, NJ, for plaintiff.

Matthew W. Millichap, Verona, NJ, for defendant Mun. Counsel of Orange, Acting as a Redevelopment Agency.

Jean D. Barrett, Ruhnke & Barrett, West Orange, NJ, for Robert L. Brown.

Michael Critchley, City Atty., Orange, NJ, for City of Orange.

POLITAN, District Judge.

This matter comes before the court on plaintiff's motion to enforce the settlement of this action. Plaintiff has proceeded by Order to Show Cause for relief from the apparent determination of the Mayor of the City of Orange Township to refuse payment on the settlement of Frank Candeliere, t/a Modern Iron Works, and originally Samuel Candeliere, now deceased. For the reasons outlined herein, plaintiff's motion to enforce the settlement is **GRANTED.**

### FACTS

Samuel S. Candeliere and Frank S. Candeliere, Jr. were iron and steel fabricators in business at 408 Tompkins Street, Orange, New Jersey as Modern Iron Works ("Modern"). In 1975 the City of Orange applied for and ultimately entered into an agreement with the United States Department of Housing and Urban Development ("HUD") to accept a Community Development Block Grant ("CDBG") pursuant to and subject to the Housing and Community Development Act of 1974, 42 U.S.C. § 5301, *et seq.* On November 22, 1977 the City Council of the City of Orange Township ("City Council" or "Council") adopted an ordinance which provided for the redevelopment of a section of the city designated as the I–280 Economic Development District. This area encompassed the Candelieres' property. The ordinance blighted the Candelieres' neighborhood pursuant to N.J.S.A. § 40:55–21.7 and adopted a Redevelopment Plan for the neighborhood pursuant to N.J.S.A. § 40:55–21.10.

The Redevelopment Plan was to be funded, at least in part, through the CDBG program. The city ordinance and grant agreement with HUD further provided that all property owners would be relocated in compliance with all applicable provisions of the of the Uniform Relocation Assistance and Real Property Acquisitions Policies Act of 1970. *See* 42 U.S.C. § 4601 *et seq.* On March 10, 1978, the Candelieres were notified that their property would be acquired by the city.

The City paid Modern $72,000 to settle the condemnation action, but did not make any

**996**

relocation payment to the Candelieres. In 1982, the City evicted Modern from the site and placed its property in trailers, effectively terminating the Candelieres' business. Modern's materials and equipment remain stored in trailers to this day allegedly because Frank Candeliere lacks the funds to make the necessary modifications to the new site. Frank's brother, originally a plaintiff in this case, has subsequently died.

Following Modern's eviction, the Candelieres filed a claim with the city for relocation benefits. Hearings on that claim commenced before the Council in 1983. The Candelieres did not participate in the hearings, arguing that the City Council was without legal authority to conduct hearings on the claim. The Council nevertheless made findings and awarded Modern $1,368.48 in relocation benefits and an additional $12,000.00 for moving expenses.

Modern appealed the award to HUD. HUD, in January 1984, issued a decision that upheld most of the Council's findings, but also concluded that Modern was entitled to compensation for four additional items: (1) installation of relocated machinery with proper utility connections and concrete pads; (2) installation of an overhead monorail system; (3) the cost of necessary licenses or permits; and, (4) expenses incurred in moving personal property not in the trailers.

Modern then filed an action against the City and many of its officials, *Candeliere v. City of Orange Township*, Civil No. 84–4351, challenging the Council's authority to hold hearings on the relocation claim. On August 19, 1985, the Honorable H. Lee Sarokin, U.S.D.J., granted the Council's summary judgment against Modern, holding that there was "no just basis for plaintiffs' dogged contention that the City Council was without power to adjudicate their claim, or that the Mayor was the sole appropriate official to take action on their claim." *Id.*, bench op. at 12 (D.N.J. August 19, 1990). The court further determined that Modern was required to exhaust that administrative remedy prior to bringing an action in district court. *Id.*

Judge Sarokin's ruling was affirmed by the Third Circuit on July 30, 1986 and the matter was then returned to the City Council.

On May 5, 1987 the City Council Acting as the Redevelopment Agency denied Modern's request to re-open its relocation claim. The Council declared that Modern had forfeited any entitlement to further relief by its protracted refusal to recognize the authority of the City Council as the Redevelopment Agency to pass on the claim. HUD upheld this determination on December 18, 1987.

In March 1989 the present action was filed against HUD and the Municipal Council of Orange, Acting as a Redevelopment Agency, challenging that decision. Evidently in response to Judge Sarokin's ruling that "The City Council is properly constituted to adjudicate plaintiff's claim," *Candeliere v. City of Orange Township*, bench op. at 12, no other defendants were named in the complaint.[1]

On September 24, 1990 I heard cross motions for summary judgment and remanded the relocation claim to the "the City Council as the Redevelopment Agency," to complete the hearing process to which plaintiffs were entitled. *Candeliere v. United States of Am. Dept of Housing and Urban Dev., et al.*, Civil No. 89–934, transcript of proceedings at 11 (D.N.J. Sept. 24, 1990). The hearing process was begun on March 27, 1991, but was thereafter repeatedly postponed.

On February 24, 1992, this court conducted a conference among counsel for the parties. At that conference, I directed the Council, sitting as the Redevelopment Agency, to appear in court on February 26, 1992 for the purpose of resuming the postponed hearing on Modern's relocation claim. All Members except the Council Chairman, who was excused, appeared, in the presence of their Counsel, Mr. Millichap, duly appointed attorney for the Council, sitting as Redevelopment Agency. The members in attendance were James Brown, Mims Hackett, Jr., Marian Silvestri, William Lewis, Louise Corvino, and Dwight Mitchell. With six of the seven members of the City Council present, the

1. With the consent of all parties, HUD was subsequently dismissed without prejudice from the action.

Court informed all parties that the hearing would begin immediately and continue every day until a determination was reached.

Prior to commencement of any hearings on February 26, 1992 the parties, through counsel, entered into settlement negotiations. These negotiations resulted in an agreement between the Council, sitting as the Redevelopment Agency, and plaintiff to settle the relocation claim for $285,000. The Council members, in open court, voted unanimously in favor of the settlement. This settlement was embodied in the Consent Order signed by the court and filed on March 12, 1992. The Consent Order provided that "the Municipal Council shall at their regularly scheduled meeting to be held on March 3, 1992 adopt the appropriate and necessary legislation to appropriate the funds to pay the agreed upon sum to plaintiff and shall in all respects cause said funds to be paid to plaintiff in an expeditious manner."

Apparently on the advice of the city's Corporation Counsel, not special counsel Millichap, the Council deferred the March 3, 1992 vote, and thereafter failed to take action at its next meeting on March 17, 1992.

On March 23, 1992 plaintiffs received correspondence from Jean D. Barrett, Esq., purporting to represent Robert L. Brown in his capacity as Mayor of the City of Orange Township. In that letter Ms. Barrett indicated Mayor Brown's consideration to withhold authorization of the payment of the settlement on the basis of alleged violation of the Open Public Meetings Act ("Sunshine Law"), and because of an alleged failure to budget for the settlement. In discussions before the court, the Mayor orally asserted his contention that the City Council, sitting as a Redevelopment Agency, did not have authority to settle the relocation claim without the Mayor's active participation in and approval of the negotiation of any settlement on behalf of the Redevelopment Agency. For this proposition the Mayor indicated he was relying upon the Faulkner Act.

Frank Candeliere, brought this motion requesting the following relief:

1. to join as a party defendant, if necessary to implement the settlement, the Mayor of the City of Orange Township as a City Officer to the extent he is responsible for and authorized to implement the terms of the Consent Order, and to execute any settlement check;

2. to join as a party defendant, to the extent necessary and as its interest may appear, the City of Orange Township as the entity responsible for and authorized to implement the terms of the Consent Order and to pay any settlement of this matter;

3. to order and direct, under penalties of Contempt of Court, the enforcement of the settlement set forth in the Consent Order; and

4. the imposition of such other and further sanctions as the court finds just to make whole the plaintiff for the unjustified and improper delay in the completion of the settlement of this matter.

A brief in opposition to plaintiff's application for Order to Show Cause was filed on behalf of Mayor Robert L. Brown and the City of Orange Township. The opposition maintains that the settlement must be set aside on essentially two grounds: (1) the settlement was approved at a meeting held in violation of the Open Public Meetings Act, and (2) the settlement does not include indispensable parties.

At an open public meeting of the City Council, Acting as the Redevelopment Agency, on April 7, 1992, Councilman Lewis indicated that the March 3, 1992 meeting failed to produce any action because "a discussion and debate arose relative to the method of payment, not the judiciousness of it, but simply the method of payment." *In the Matter of: A Special Meeting of the City Council # 84–92 Modern Iron Works,* transcript at 10 (The City of Orange Township City Council Meeting, April 7, 1992).

At the April 7th meeting, the Council reconvened as the Redevelopment Agency. Assistant Corporation Council Vena addressed the Council at first in open session. He told the Council:

What has been filed as of today is an application on behalf of the City of Orange Township and its mayor to set aside that settlement on the grounds that it was en-

tered into illegally and in an ultravires manner, as it is the position of the City Attorney and City of Orange Township and mayor to pass this resolution would be equally ultravires and illegal.

\* \* \* \* \* \*

We have since come to the conclusion, and a strongly held conclusion that, in fact, what the Council did was illegal, ultravires, what it is proposing to do is illegal and ultravires. The Council, in fact—the initial premise is incorrect. The council is not sitting as the redevelopment agency, the designated redevelopment agency is the City of Orange Township.

\* \* \* \* \* \*

The Council is not forced not to take any further action but the Council is being advised, at least by me, not to compound an illegal act by making another illegal act.

\* \* \* \* \* \*

You don't have to take my word for it because that's exactly the issue that's currently before Judge Politan, and if you simply await his determination with regard to that question I just raised, we will have the authority of the United States District Court, to make—for Council to make its determination at that point. To act before that when the issue is squarely before the United States District Court as it wasn't on the 26th of February, Judge Politan will clearly tell you what is and what isn't appropriate within his view having had the applicable law before him from every possible perspective.

The City Council, sitting as the Redevelopment Agency, then went into executive session with the Assistant Corporation Counsel. Mr. Millichap, special counsel in this matter, was not present. Upon reconvening in public session the Council tabled the confirming Resolution, and thereafter adjourned.

I heard oral argument on plaintiff's application on April 27, 1992 and thereafter, on April 29, 1992 signed an Order directing, *inter alia:*

[t]hat a Resolution or Resolutions approving the settlement agreed to on February 26, 1992 and providing for the payment thereof be placed on the agenda for a vote at the May 5, 1992 meeting of the Council of the City of Orange Township with sufficient notice to satisfy the requirements of N.J.S.A. 10:4–9, *et seq.* ("Sunshine Law").

Because there was no quorum present at the May 5th meeting of the City Council, no action was taken with respect to this court's April 29, 1992 Order.

A special meeting of the City of Orange Council was held on May 13, 1992. Members of the Council present at that meeting were James J. Brown, Mims Hackett, Jr., William R. Lewis, Donald Page, Marian Silvestri, Todd Mark Galante, Pres., and Rudolph Thomas who, at the meeting, was sworn in as Councilmember, East Ward.

Mr. Millichap had prepared two resolutions which were on the agenda. The first was a resolution of the City Council acting as the Redevelopment Agency approving the February 26, 1992 settlement of the relocation claim of Modern Iron Works in the sum of $285,000. The second resolution was a resolution of the City Council appropriating funds for the settlement of the relocation claim of Modern Iron Works. The resolution approving the February 26, 1992 settlement received only three affirmative votes by the Council, Sitting as Redevelopment Agency, and was, therefore, not adopted. James J. Brown, William Lewis and Todd Galante voted in favor of the settlement on May 13, 1992. Two individuals who had voted in favor of the settlement in open court on February 27, Marian Silvestri and Mims Hackett, Jr., voted against the settlement at the May 13, 1992 meeting. A newly elected councilman abstained from voting on the basis that he knew very little about the Modern Iron Works litigation. Consequently, the Council took no action to fund the settlement.

In a letter to the court dated May 19, 1992, Frank Candeliere's attorney renewed plaintiff's application for an Order to Show Cause, requesting that this court order the Council to abide by the terms of the consent order. Plaintiffs further requested that this court issue an order in the nature of a *mandamus* directing the Mayor to take such action as is necessary to pay the agreed upon settlement amount to Mr. Candeliere, including signing

the check. In that letter Counsel argued that any Sunshine Law objection to the settlement was time barred because no action was taken to void the February 26 settlement vote within the 45 day period prescribed by N.J.S.A. 10:4–15.[2] Counsel for plaintiff further noted:

neither the Mayor nor the City have applied for status as parties intervenor or brought separate collateral actions anywhere to challenge the settlement vote.... Nor has any appeal been filed by the council, either in its municipal legislative capacity or sitting as a redevelopment agency, from the consent order of March 12, 1992.... Both the Mayor and the City steadfastly remain non-parties to any litigation involving Modern Iron Works.

In response to this letter, Counsel for Mayor Brown notified this court in a letter dated May 21, 1992 that she filed a Complaint in Lieu of Prerogative Writ on behalf of Mayor Robert L. Brown demanding judgment declaring the action of the City Council in settling the Modern Iron Works relocation claim void. This letter was the first notice to this court of Mayor Brown's State Court suit against the Orange City Council. Counsel for the Mayor made no mention of this state court action at the April 27, 1992 hearing on plaintiff's Order to Show Cause. The City Council, City of Orange Township was named as the sole defendant.

## DISCUSSION

### Open Public Meetings Act

■ The court will not address the contention that the settlement was approved at a meeting held in violation of the notice requirements of the Open Public Meetings Act, N.J.S.A. § 10:4–6 *et seq.*, because this claim is moot. The Mayor and the City concede that Council has power to ratify actions taken at a nonconforming meeting by acting *de novo*. *See* N.J.S.A. § 10:4–15. The effort of the Council, on April 7, 1992, sitting as the Redevelopment Agency, to comply with the terms of the Consent Order would have cured any alleged or apparent deficiency in

its compliance with the Open Public Meetings Act. The City and its Mayor may not now be heard to argue that any past deficiency is not cured when it was the inflammatory rhetoric and advice of the Assistant Corporation Counsel that persuaded the City Council, sitting as the Redevelopment Agency, to await the determination of this court on the underlying issues presented.

The Mayor and the Assistant Corporation Counsel can not have it both ways. They can not insist upon Council compliance with the Open Public Meetings Act and then thwart the Council's effort to comply with threats of illegality. For this reason the court considers the allegations regarding the Open Public Meetings Act as moot.

The fact that the Mayor has filed an action in lieu of prerogative writ in Superior Court does not alter my determination that the Open Public Meetings Act challenge is moot. It is clear from the text of the Mayor's complaint that the new action is framed and intended to result in a decision of the Mayor's claims without the participation of Mr. Candeliere and special counsel, Mr. Millichap.

Like Fed.R.Civ.P. 19, New Jersey Rule 4:28–1 includes among "Persons Needed for Just Adjudication" a person claiming:

an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or other inconsistent obligations by reason of the claimed interest.

Both Mr. Candeliere and the Council, sitting as the Redevelopment Agency, have interests which require protection in the new action; both may be subject to multiple or inconsistent obligations in any decision by the Superior Court and the Federal District Court. Both Mr. Candeliere and the City Council sitting as the Redevelopment Agency

---

2. N.J.S.A. 10:4–15 allows for a challenge by a proceeding in lieu of prerogative writ in the

Superior Court within 45 days "after the action sought to be voided has been made public."

fall within the rules for joinder in the Mayor's suit against the Council.

Yet neither Mr. Candeliere nor the Orange City Council sitting as the Redevelopment Agency are named as defendants in Mayor Brown's Complaint. . Both are separately represented. Both participated in preparation and argument of the subject matter of this new action when they appeared before me on April 27, 1992. The issues in the new complaint were both briefed and argued before this court on that day.

Mr. Millichap has served for years as counsel to the Redevelopment Agency, and has been paid to do so with checks signed by the Mayor. Mr. Millichap is the attorney of record for the City's Redevelopment activities. He is retained by separate contract with the City. It was Mr. Millichap who advised the Council in its settlement and actions of February 26, 1992 challenged in the Mayor's new law suit. Clearly, Mr. Millichap should have been served or provided with a copy of the complaint.

Instead, a copy of the complaint was provided to Mr. Vena, Mayor Brown's appointee as attorney for the City, who has appeared and acted in opposition to the settlement of Mr. Candeliere's relocation claim. No notice of the Superior Court action was provided to the parties in the Federal action until May 21, 1992. No council members were given a copy of the complaint or received a summons. It is improper for Mayor Brown to litigate the same issues in the state court with neither opposition nor notice to the City Council, Acting as Redevelopment Agency, or Candeliere.

### Indispensable Parties

■ I now turn to the contention that the settlement does not include indispensable parties: the City and Mayor Brown. Citing Fed.R.Civ.P. 19(a), which compels joinder "if (1) in the person's absence complete relief cannot be accorded among those already parties," the Mayor and the City, at this late date, assert three bases to consider themselves indispensable: (1) the Council is not the Redevelopment Agency; (2) the City Council is without power to settle law suits on behalf of the City; and (3) the City Council, on its own, has no source of funds other than the city budget.

A review of the law and the history of redevelopment in Orange reveals that nothing within the jurisdiction of the Mayor makes his joinder indispensable; nothing within the responsibility of the Corporation Counsel makes joinder of the Township indispensable, and nothing within the Redevelopment Agencies Law, N.J.S.A. § 40:55C–1 et seq., makes the Council, sitting as the Redevelopment Agency, incompetent or insufficient to settle this case.

To argue that the City Council is not the Redevelopment Agency and that it does not have power to settle law suits on behalf of the City is spurious. N.J.S.A. § 40:55C–37 provides:

> Nothing in this Act shall prohibit a municipality, if it so determines, from exercising the powers conferred herein, and in the "Redevelopment Agencies Law," P.L.1949, c. 306 (C.40:55–1 et seq.), either directly or by designating another public body to exercise these powers.

Defendant's Answer conceded that the City Council is the Redevelopment Agency of the City of Orange Township. There is no allegation, citation or reference to the Mayor or any role whatsoever which he might have in the redevelopment process. The Council, acting as Redevelopment Agency, has condemned property, conducted public hearings and settled relocation compensation claims for a variety of claimants in this guise.

N.J.S.A. § 40:55C–12, allocates the exercise of Redevelopment Agency powers "to the governing body of any municipality acting as an agency." The "governing body" means, in the case of a municipality "the common council, board of finance, or the board of commissioners or other body having charge of its finances." N.J.S.A. § 40:55C–5(c). As a Mayor/Council form of government, the Faulkner Act, N.J.S.A. § 40:69A–36, places squarely within the power of the Orange City Council "[a]ctions specified as resolutions in the 'Local Budget Law,'" N.J.S.A. § 40A:4–1 et seq., and the "Local Fiscal Affairs Law," N.J.S.A. § 40A:5–1 et seq. These include adoption of the budget,

N.J.S.A. § 40A:4–10, emergency temporary appropriations, N.J.S.A. § 40A:4–20, and emergency appropriations, N.J.S.A. § 40A:4–46, under the Local Budget Law, approval and payment of claims, N.J.S.A. § 40A:5–17, payment of salaries and wages, N.J.S.A. § 40A:5–19, and payment of advance expenses. N.J.S.A. § 40A:5–16.1. Clearly, the City Council has charge of finances as well as Redevelopment Agency powers under N.J.S.A. § 40:55C–37. Those powers include the powers to "make and execute contracts" and "pay or compromise any claim." N.J.S.A. § 40:55C–12(a), (g). Acting as the Redevelopment Agency, therefore, the City Council has the power to settle law suits on behalf of the City.

The history of redevelopment in Orange, and all of the conduct of the parties supports this interpretation. In fact, in *Candeliere v. City of Orange Township,* Civil No. 84–4351, bench op. at 10–11 (D.N.J. Aug. 19, 1990), Judge Sarokin determined:

> [I]t is clear that the City Council, as governing body of the municipality, had the power to adjudicate plaintiffs' claim for relocation assistance in the first instance, subject to HUD's regulations governing such claims.

It is only now, after the settlement of the case, that the Mayor asserts control and the City, through the Assistant Corporation Counsel, asserts an interest adverse to the determination of its own City Council.

The Council's authority as Redevelopment Agency has not been any mystery to Mayor Brown. As exhibits submitted by plaintiff reflect, the Council has always held itself out as the City's Redevelopment Agency, without reference to the Mayor. Hearings and settlements were conducted and authorized by the Council. Redevelopment bills incurred by the Council and paid by the City in due course, were never rejected on jurisdictional grounds. As Mayor Brown acknowledges he has been signing City Checks to pay Redevelopment Agency bills since assuming his office in 1988.

Mayor Brown has been on notice of this matter since its filing in March 1989. Service of the complaint in this matter upon the Municipal Clerk was acknowledged by the

Corporation Counsel's office, which indicated assignment to the case to Mr. Millichap. The Mayor has signed the counsel fee checks for Redevelopment Agency Special Counsel Millichap. Through the Corporation Counsel, the Mayor has been apprised of the conduct of the case, including the results of the September, 1990 summary judgment motions. Ms. Barrett's letter of March 23, 1992 indicates that the Mayor was aware of appropriations in his annual budgets to cover plaintiff's relocation costs. The Mayor can not have been unaware of the Council's settlement of a separate relocation claim in the amount of $247,000, which he paid in January, 1989. At no time until after the settlement of this matter on February 26, 1992 and the entry of the consent order on March 12, 1992, has Mayor Brown asserted any interest beyond the budgeting of funds amounting to about one third of the settlement.

Mayor Brown cannot legitimately abort this settlement on the basis of inadequate budget appropriations. While it may be true that neither the Mayor nor the Council have any sources of funds other than the City budget, this does not leave the Council unable to fulfill its duties. Rather, a vehicle has been provided for the execution of its duties. It is the Mayor's job to sign checks. N.J.S.A. § 40A:5–17(b) provides:

> Payment of Claims.... the method shall be as follows:
>
> (2) In the case of a municipality, by check drawn on the municipality, signed by the mayor or other chief executive officer and the municipal clerk and countersigned by such other officer or officers as are designated by ordinance.

Conversely, it is the Council's job to decide which claims are approved, which checks are signed, whether they are signed, and for how much. N.J.S.A. § 40A:5–17(a). It is also the Council's job to introduce, advertise, hold hearings on, and adopt a budget for the City. N.J.S.A. § 40A:4–4. The Mayor's obligation to prepare and submit a budget for Council's consideration, N.J.S.A. § 40:69A–40(e), does not empower the Mayor to divest the Council of its responsibility and control of the City's

finances. Nor does the Mayor's duty to supervise and administer the budgetary process, *id.*, empower the Mayor to usurp the Council's power of the purse.

In fact, the Faulkner Act strictly limits the Mayor's right to veto any Council actions. N.J.S.A. § 40:69A–41. Only ordinances, not resolutions are subject to Mayoral veto. Neither the budget resolution, N.J.S.A. § 40A:4–10, nor the resolutions authorizing payment of claims, N.J.S.A. § 40A:5–17(a) are subject to the Mayor's veto. Yet without citation to any statute, precedent or procedure, the Mayor now claims the ability to void the Candeliere's relocation settlement by simply refusing to perform his ministerial duty of signing the check. His obligation to sign the settlement check becomes important only upon his *ultra vires* assertion of the right to refuse to sign checks. The Mayor's participation in the case is otherwise no more indispensable than that of the printer who prints the checks, or of the postal employee who delivers them. The court is not faced here with the action of a responsible city official asserting jurisdiction and control over the functions and responsibilities of the Redevelopment Agency. In fact, there is no evidence whatsoever that Mayor Brown, or any of his predecessors, performed anything more than the ministerial acts of executing the relocation checks of the displacees of the Urban Renewal Area.

The settlement should not be allowed to founder on the Mayor's assertion of authority to "[n]egotiate contracts for the municipality, subject to council approval," N.J.S.A. § 40:69A–40(j). The Council's actions here are governed by the Redevelopment Agency Law. The Mayor cannot divest the Council of jurisdiction by declaring its activity "executive," and arrogating the power to himself.

N.J.S.A. § 40:55C–15(*l*) articulates the clear legislative determination that it is the governing body (here, both as council and Redevelopment Agency) that is responsible for and has jurisdiction "to arrange . . . for the relocation of residents, industry or commerce displaced from a redevelopment area." It is not to the Mayor but to the Agency, the governing body, that the statute entrusts this duty. The law provides for no participation

by the Mayor in the determinations of this separate "public body politic and corporate," either as appointed or as constituted by the Council. N.J.S.A. § 40:55C–6; § 40:69A–41(b). The authority of the Council, sitting as Redevelopment Agency, is nowhere made subject to the technical requirement that it rubber stamp, approve or reject only those contracts, agreements, and settlements negotiated by the Mayor. On the other hand, the Faulkner Act does provide for *Council* approval of any contracts which the Mayor negotiates. N.J.S.A. § 40:69A–40(j).

In *Robertson v. Wash. Twp. Mun. Ut. Auth.*, 211 N.J.Super. 504, 511 A.2d 1296 (L.Div.1986), *aff'd*, 215 N.J.Super. 239, 521 A.2d 892 (App.Div.1987), the court affirmed the Law Division determination that the Mayor of Washington did not participate, *ex officio*, as a member of the local Municipal Utilities Authority. Like the Washington Township MUA, Orange's Redevelopment Agency is a separate entity; doubly so because it is coextensive with the Council, an entity in which the Mayor neither votes nor attends. The Mayor's assertion of authority over the settlement approved by the Redevelopment Agency is without support in the statute or the case law. As in Washington Township, "other procedures are required by the specific terms of the general law." N.J.S.A. § 40:69A–32.

Orange has conducted its Redevelopment activity through its City Council, sitting as a Redevelopment Agency, since 1977. The City has blighted and condemned property, including plaintiff's property; it has relocated and paid for the relocation of residents and businesses, except for plaintiff's business; it has conducted public hearings, tried and settled claims and cases. It is only now, on the basis of inadequate analysis of the costs to be faced and the budgeting to be anticipated, that Mayor Brown has chosen to interject himself into the redevelopment process. It is only now, in this election year, that the settlement of Mr. Candeliere's claim has caught Mayor Brown's eye. It is only after years of delay, litigation and effort to complete this case that the Mayor and the City Attorney feels it incumbent upon them to participate, and to have participated, in

settlement negotiations of this case. This is wrong as a matter of law, this is wrong as a matter of history, and this is too late.

Fed.R.Civ.P. 24 Intervention, is mirrored by New Jersey Rule 4:28–4(a) and (d): "the State or other governmental subdivision shall be permitted, upon timely application, to intervene in any action as to which it has received notice pursuant to this rule." No effort was ever made by the Mayor or the Corporation Counsel to intervene, to join, or to participate in this litigation, or the redevelopment, relocation or settlement process. No inkling of interest or desire to participate, let alone indispensability, was ever suggested from the time of the filing of the suit until Ms. Barrett's letter of March 23, 1992, nearly one month after the matter was settled in open court. Neither the City nor the Mayor, parties to *Candeliere v. City of Orange Twp.,* Civil No. 84–4351, took issue with Judge Sarokin's ruling that the "City Council, as governing body of the municipality had the power to adjudicate plaintiff's claim for relocation assistance, subject to HUD's regulations governing such claims." *Candeliere v. City of Orange Twp.,* bench opinion, at 17–18.

There is no basis for considering the Mayor and City as proper, or indispensable, parties to the settlement. Mayor Brown has neither statutory nor equitable authority to veto or upset the duly authorized settlement of the Candeliere relocation claim as approved by the City Council. Formal inclusion of the Mayor in the pleadings of the underlying action is not necessary where, as in the present instance, complete relief may be obtained by an order of *mandamus* for the performance of a ministerial act.

In *Grosso v. Paterson,* 59 N.J.Super. 412, 157 A.2d 868 (L.Div.1960), *aff'd,* 33 N.J. 477, 166 A.2d 161 (1960), the court ordered the City of Paterson, not then a party to the action, to make necessary payments to the Board of Health for salaries of Board employees. The trial court held:

> The granting of the writ "is not a discretionary matter. *Mandamus* is the only remedy of the creditor for the enforcement of his [judgment]. . . ."
>
> *Mandamus* lies because the judgment is the ". . . establishment of a valid claim, for

which it is the duty of the proper officers to provide means of payment out of the revenues of the defendant. . . ."

> "Officials can have no higher duty than the payment of honest debts of municipalities reduced to judgment and it is not discretional with them as to whether or not they shall do so."

> \*   \*   \*   \*   \*   \*

> The duty of the board of finance to draw a check or warrant against the funds appropriated to the board of health when so directed by the board of health is ministerial and can be enforced by *mandamus* at the suit of plaintiffs, judgment creditors.

*Id.* 59 N.J.Super. at 415–17, 157 A.2d 868 (citations omitted).

#### Public Policy

■ There is a strong public policy supporting enforcement of the settlement of this action. *See Bistricer v. Bistricer,* 231 N.J.Super. 143, 555 A.2d 45 (Ch.Div.1987) ("The state has a strong public policy in favor of settlements. . . . Courts will therefore 'strain to give effect to the terms of a settlement wherever possible' "). *Id.* at 147, 555 A.2d 45 (citations omitted). Conversely, there is no public policy whatsoever supporting the Mayor's and City's late attempts to scuttle this settlement. The excuses and technicalities are inadequate to overcome the public policy supporting enforcement of the settlement and the payment of the relocation claim to Mr. Candeliere. As the *Bistricer* court noted:

> An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into, and which a court, absent a demonstration of "fraud or other compelling circumstances" shall honor and enforce as it does other contract.

*Id.* (citation omitted). There is neither allegation of fraud nor assertion of any compelling circumstance which would serve to vitiate this settlement.

After fifteen years, the Council has voted to settle Mr. Candeliere's relocation claim. The City's failure to anticipate funds sufficient to cover this relocation claim is in no

**1004**

way due to any failure of notice of the nature, extent or amount of the claim. Rather, Candeliere appears to be the victim of insufficient foresight in the City's budgeting process, or in a political decision to reduce the amount of the anticipated payment in order to minimize the impact on the projected tax rate. This consideration does not affect either the settlement's validity or enforceability.

The Mayor will not be allowed to interpose arbitrary and groundless impediments to completion of this claim at this late date. The Council, Acting as Redevelopment Agency, will not be permitted to avoid its duty to pass the necessary implementing legislation to appropriate the funds for the settlement. It remains, unfortunately for the court to order the Council to appropriate the funds for settlement and to issue an order in the nature of a *mandamus* directing the Mayor to take all such action as is necessary to effect the expeditious settlement of this matter embodied in the Consent Order of March 12, 1992. Accordingly, plaintiff's motion to enforce the settlement is **GRANTED.** An appropriate Order will accompany this Letter Opinion.

**SO ORDERED.**