**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1899
_____

JOSEPH D. LENTO, Esq., an individual; LENTO LAW FIRM,
a limited liability company

v.

KEITH ALTMAN, Esq., an individual; THE LAW OFFICE OF KEITH ALTMAN
PLLC, a/k/a K Altman Law, a limited liability company; ARI KRESCH, an individual;
RICHARD GILL, an individual; JOHN DOES 1-10, fictitious individuals;
ABC BUSINESS ENTITIES 1-10, fictitious entities

KEITH ALTMAN, Esq., an individual; THE LAW OFFICE OF KEITH
ALTMAN PLLC, a/k/a K Altman Law, a limited liability company,
Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:22-cv-04840)
District Judge: Honorable Robert B. Kugler

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 3, 2025

Before: RESTREPO, MONTGOMERY-REEVES, and SCIRICA, *Circuit Judges*

(Filed: March 26, 2025)

---

OPINION[*]

---

RESTREPO, *Circuit Judge*

This case involves a falling-out between two formerly associated lawyers and their namesake law firms. The drawn-out breakup of this working relationship has been convoluted, but the issue before us is narrow. Pruned from a lawsuit that once involved multiple defendants and multiple claims, only the dismissal of a single counterclaim is left for our review. So we highlight only the details most salient to that claim.

Appellants Keith Altman Esq. and The Law Office of Keith Altman PLLC (together, "Altman") contend they and Appellees Joseph Lento Esq. and Lento Law Firm (together, "Lento") entered into an agreement dissolving their working relationship in which Altman had helped represent Lento's clients for a split of the fees. Shortly after Altman alleges they contracted to sever ties and release all possible claims, Lento sued Altman and two colleagues in federal court. Altman then brought a counterclaim for breach of contract. All of Lento's claims have been dismissed, and none are part of this appeal. The District Court also dismissed Altman's counterclaim, finding that the friends turned foes never entered a binding contract. Altman appeals, and for the reasons below, we will affirm.

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

## I.

In May 2020, Altman started providing legal services to Lento's clients in exchange for a split of the legal fees. The lawyers never formalized their agreement in writing. Instead, the working relationship was defined by an oral agreement that they twice modified. After a few rocky years, they agreed to untether their legal practices. Altman and Lento's agent negotiated the terms of the breakup and payment of outstanding fees to Altman. Altman started with a demand for $500,000 in unpaid fees. The day of the negotiation, Altman sent Lento a document titled "Memorandum of Understanding" that purportedly reflected the terms discussed earlier with Lento's agent.

Lento followed days later with another document titled "Settlement Agreement and Mutual Release." Both documents provided for Altman to receive $365,000 in consideration and for mutual release of all claims by both sides, among other terms. Lento's document left four highlighted blank spaces: three spaces for action deadlines and one for the amount that would be placed in an escrow account to pay for chargebacks initiated by clients. Neither document was signed by either party.

A few days later, Lento sued Altman and two of his colleagues, bringing several state and federal claims. Altman later brought a counterclaim for breach of contract, arguing that the document Lento sent him was a binding contract that Lento then violated by suing him. The District Court first dismissed all of Lento's claims against Altman's colleagues and some claims against Altman, none of which are at issue in this appeal. In March 2024, the District Court dismissed Altman's counterclaim, and three weeks later,

3

it dismissed Lento's remaining claims for lack of subject-matter jurisdiction. Altman appeals the dismissal of his counterclaim.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1332 and 1367,[1] and we have jurisdiction under 28 U.S.C. § 1291.[2] We review de novo the District Court's

---

[1] Altman contends that the District Court erred in maintaining jurisdiction and ruling on the merits of his counterclaim after it had dismissed Lento's federal law claims. Even assuming the District Court only had supplemental jurisdiction over Altman's counterclaim, we find no error in the District Court retaining jurisdiction. A district court "*may*" decline the exercise of supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3) (emphasis added). The decision is discretionary.

[2] Lento's challenge to our appellate jurisdiction is baseless. True, the March Order dismissing Altman's counterclaim, was not a final decision under § 1291. But that order merged with the District Court's final order, so we can review it on appeal. *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders . . . may be reviewed on appeal from the final order."). It should not surprise Lento that an order dismissing all remaining claims, denying his motion to amend the complaint, and directing the clerk to close the case is a final decision under § 1291. *See H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 411 (3d Cir. 2017) (finding that the district court entered an appealable final order when it "dissociate[d] itself from the case entirely" after resolving all the claims before it (alteration in original) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996))).

4

dismissal of Altman's counterclaim under Federal Rule of Civil Procedure 12(b)(6). *See Foglia v. Renal Ventures Mgmt.*, 754 F.3d 153, 154 n.1 (3d Cir. 2014).

**III.**

Altman contends that the document Lento sent him is a binding contract. As a result, the argument goes, Lento broke the agreement by suing Altman and refusing to pay the $365,000.

Courts review a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011). "[O]ur review is restricted to the face of the counterclaim[,]" *id.*, and any exhibits attached to the pleading. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The counterclaim should only survive if it states a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This analysis involves three steps. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, we note the elements of the claim. *Id.* Second, we identify allegations that "are no more than conclusions" and therefore "not entitled to the assumption of truth." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In other words, we pay no heed to "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Nor do we consider "naked assertions devoid of further factual enhancement." *Id.* Third, we accept as true the well-pleaded factual allegations, draw all reasonable inferences in the

5

counterplaintiff's favor, and determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* at 130 (quoting *Iqbal*, 556 U.S. at 679).

The elements of a breach of contract claim under New Jersey law are: (1) that the parties entered into a binding contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused a loss to the plaintiff. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016).

The key issue here is the first element. A binding contract's terms must be precise enough such "that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quoting *W. Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958)). The parties must have agreed on the essential terms. *Id.* If they did not, there is no contract to enforce. *See id.*

We accept the following well-pleaded allegations as true: (1) Lento appointed an agent to negotiate outstanding legal fees, and Altman demanded $500,000 during that negotiation; (2) Later that same day, Altman sent a proposed agreement to dissolve the relationship—Exhibit A to his counterclaim; (3) Lento responded a few days later with his own proposal—Exhibit B to the counterclaim; (4) A few days after that, Lento filed this lawsuit; and (5) Altman complied with what would be his obligations under the proposal sent by Lento.[3]

---

[3] Altman's allegations that presume the existence of a contract are conclusory and cannot be accepted as true. This includes his allegations (1) that the parties entered into an agreement, (2) that the Lento draft is binding, (3) that both parties agreed that $365,000 was a fair resolution of their dispute, and (4) that Lento breached the contract.

So, did Altman plausibly plead that a binding contract existed? He claims the document Lento sent him is an enforceable agreement. That document, however, contained four highlighted blank spaces: (1) the date by which Altman would return the files for pre-litigation student defense clients to Lento; (2) the date by which the parties would jointly draft a communication to affected clients; (3) the date by which Altman would send new attorney fee agreements to clients presently in litigation; and (4) in a section entitled "MUTUAL INDEMNIFICATION," the total amount the parties would fund an escrow account to pay for "chargebacks initiated by clients." App. 93–95 (Countercl. Ex. B). The document also included signature lines but was not signed by either party.

The blank dates, as the parties best understand, appear to be deadlines for obligations that would finalize the breakup. Without these timing details, the parties could not determine when to untangle their practices. In other words, these dates were essential terms for the alleged agreement. Adding to this uncertainty, the blank space for the escrow account further shows that several terms in this agreement were not "ascertain[able] with reasonable certainty." *Weichert Co. Realtors*, 608 A.2d at 284 (quoting *W. Caldwell*, 138 A.2d at 410). The parties could not determine their financial exposure under the alleged agreement without that figure. If anything, the fact that the blank deadlines and escrow amount were highlighted underscores the materiality of those terms to the parties and implies that negotiations were ongoing.

The cases Altman relies on are tangential at best. He cherry-picks dicta describing New Jersey's public policy favoring litigation settlements and minimizing the importance of fully fleshed out and signed settlement agreements. But those cases all involved

7

motions to enforce settlement agreements negotiated during active litigation.[4] This situation is different. Altman here seeks to enforce an alleged contract for the dissolution of his working relationship with Lento. The fact that Lento's draft included a release of all claims does not transform Altman's breach of contract claim into a motion to enforce a settlement agreement. Thus, those cases are easily distinguishable and do not affect our conclusion that Altman and Lento never contracted.

Taken together, we find Altman's well-pleaded allegations insufficient. He did not plead the existence of a contract with precisely defined essential terms. Thus, we agree with the District Court that he failed to state a plausible claim for breach of contract.

## IV.

For the above reasons, we will affirm the District Court's order.

---

[4] *See e.g.*, *Dep't of Pub. Advoc. v. N.J. Bd. of Pub. Util.*, 503 A.2d 331, 331–32 (N.J. Super. Ct. App. Div. 1985) (reversing the decision of a public utilities board to alter the terms of a settlement agreement which had resolved a pending case); *Lahue v. Pio Costa*, 623 A.2d 775, 776–77 (N.J. Super. Ct. App. Div. 1993) (compelling compliance with an oral agreement settling active litigation); *Bistricer v. Bistricer*, 555 A.2d 45, 46 (N.J. Super. Ct. Ch. Div. 1987) (giving effect to an oral agreement reached during a settlement conference despite the parties' inability to later agree on a fleshed-out writing); *Mid-Monmouth Realty Assocs. v. Metallurgical Indus., Inc.*, No. 0503-14, 2016 WL 6776115 (N.J. Super. Ct. App. Div. Nov. 16, 2016) (enforcing a settlement agreement when the parties had agreed to the essential terms, even advising the court of its imminent consummation, but plaintiff later refused to execute the release documents).